Rabin, J.
The principal issue on this appeal is whether the evidence offered at trial, circumstantial in nature, was sufficient to establish the defendants’ guilt of manslaughter in the first degree beyond a reasonable doubt.
John Benzinger, defendant Patricia Benzinger’s husband, was found dead in his home by the police at approximately 12:30 a.m. on August 14, 1970. The deceased had been seen alive at about 7:00 p.m. on the evening of August 13, 1970. The prosecution attempted to prove that the defendants Patricia Ben-zinger (Benzinger) and Carl Miller (Miller) were present at the Benzinger home at the time of the homicide and that the only reasonable inference from the facts proven was that acting in concert they had killed John Benzinger by stabbing him. We conclude that the cumulative effect of the evidence is sufficient to sustain the jury’s verdict of guilt.
*32 The ofit-stated rule with respect to convictions based exclusively upon circumstantial evidence is that for guilt to be proven beyond a reasonable doubt the hypothesis of guilt should flow naturally from the facts proved, and be consistent with them; and the facts proved must exclude “to a moral certainty ” every reasonable hypothesis of innocence. (E.g., People v. Borrero, 26 N Y 2d 430, 434-435; People v. Cleague, 22 N Y 2d 363, 365-366.) The reason for the current application of this rule is not that circumstantial evidence is thought to be weaker than direct evidence, since the reverse is frequently true. Rather, the rule draws attention to the fact that proof by circumstantial evidence may require careful reasoning by the trier of facts. By highlighting this aspect, the rule hopefully forecloses a danger legitimately associated with circumstantial evidence — that the trier of facts may leap logical gaps in the proof offered and draw unwarranted conclusions based on probabilities of low degree (see People v. Cleague, supra, at p. 367). In the end, the application of the test becomes “ a question whether common human experience would lead a reasonable man, putting his mind to it, to reject or accept the inferences asserted for the established facts.” (People v. Borrero, supra, at p. 435; People v. Wachowicz, 22 N Y 2d 369, 372.)
Since the issue is the sufficiency of the circumstantial evidence, we view the facts most favorably to the People (People v. Cleague, supra, at p. 366; see Noto v. United States, 367 U. S. 290, 296). "We assume that the jury credited the prosecution witnesses and gave the prosecution’s evidence the full weight that might reasonably be accorded it.
Viewed in this light, the evidence is sufficient to support the jury’s verdict. Both Benzinger and Miller gave written statements to the police to the effect that they were together the entire day and evening of the crime. Neighbors testified that they had seen both Benzinger and Miller at her home at several different time's on the night in question. Miller was seen at the house at 10:30 p.m., and his car remained there from that time up until the arrival of the police. Since the Benzinger residence was located on a dead-end courtyard, the presence of the car indicates that the defendants remained in the house during this time. The prosecution expert testified that in his opinion death occurred after 9:45 p.m. The Benzinger home was a one-floor *33 residence, approximately 28 feet in total length, with one bath and three rooms. The bathroom, where the body was found, was only five or six feet from the kitchen and the living room, rooms in which the defendants had been that evening. The portion of the hall into which the deceased’s legs protruded was visible from at least certain sections of the living room. Upon analysis this evidence establishes that the defendants were present at Benzinger’s home the evening of August 13, that the decedent was killed during the time the defendants were present, and that given the physical layout of the house, and the conduct of the defendants, there was no reasonable explanation of the decedent’s death other than at the hands of the defendants. The proven facts lead naturally and reasonably to the conclusion of guilt, and are inconsistent with any reasonable hypothesis of innocence.
There is, furthermore, additional evidence which tends to exclude an hypothesis of innocence. Both defendants made false statements to the police concerning the time of their return to the Benzinger home on August 13. Miller stated he had been sleeping at his house in the early evening and that “I woke about 9:30 p.m. and I and Patricia sat around the [Miller] house and watched television. ' I left my house with Patricia about 11:15 p.m. and I drove to her house. We 'both entered her house together, and we sat in the living room, and had a drink.” The testimony of several witnesses placed Miller at the Benzinger residence much earlier than 11:15 p.m.
While Benzinger’s written statement contained no reference to the time at which they arrived at her home, after the police officer saw the body she stated to him: “ I don’t know, we just got home. We were playing some records and then I saw the legs sticking out of th@ bathroom.” Benzinger’s statement that they had “ just got home ” when they found the body and called for help, approximately 12:15 a.m., is also clearly inconsistent with the testimony of the witnesses placing her at the house much earlier.
In the circumstances of this case, it is difficult to come to any other conclusion than that these false statements indicate a consciousness of guilt. We recognize that as a general proposition false statements are a relevant but weak form of evidence. (See, e.g., People v. Leyra, 1 N Y 2d 199.) Since there may be reasons *34 other than guilt of the crime charged which would prompt a person to give a false statement, the probative weight of 'such statements depends upon the facts of the particular case. On the facts here, it is reasonable to assign a moderate degree of probative force to the false statements.
If truly innocent, it is doubtful that the defendants would have been aware that falsifying the time of their arrival at the scene of the crime would ténd to be exculpatory. If innocent, the degree of 'suspicion cast upon them by virtue of reporting the homicide would be the same no matter what time they found the body. To realize that the time of their arrival was significant, the defendants would have to be aware that the homicide was committed while they were present in the house, or that they were present in the house for a suspiciously long time without discovering it. Neither alternative is reasonably consistent with innocence.
The evidence is also sufficient to prove that each of the defendants intentionally participated in the homicide with the requisite intent (see Penal Law, § 20.00). Each was present at the scene of the crime. They had been together before, during, and after the homicide; and they both falsified the time of their arrival at the scene. While each of these facts is inconclusive of itself, taken together they form a sufficient basis to infer that each defendant either performed the stabbing, or intentionally aided the act with the the requisite intent.
One other argument warrants brief mention. Defendant Ben-zinger claims that it was reversible error for the trial court to have admitted into evidence Miller’s written statement, which contained an assertion to the effect that the defendants did not arrive at the Benzinger home on August 13, until after 11:15 p.m. Benzinger’s written statement contained no reference to the time of the defendants’ arrival at her home. Since Miller did not take the stand, Benzinger had no opportunity to cross-examine him with regard to the accuracy of the time mentioned in his statement. Although the trial court instructed the jury to use Miller’s 'statement only in his case, and not against Benzinger, Benzinger, citing Bruton v. United States (391 U. S. 123), claims that this instruction was not sufficient to protect her constitutional right to confront witnesses against her. However, Benzinger’s oral statement to the police that they “ just got *35 home ” when they found the body and called for aid, and her written statement that she was with Miller all day, substantially duplicate Miller’s written statement. In this situation, the Bruton rationale is not applicable. (See People v. McNeil, 24 N Y 2d 550.)
We have considered the other contentions of both defendants and find them to be without merit.
Accordingly, the orders of the Appellate Division should be affirmed.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Wachtler and Stevens concur.
Orders affirmed.