■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOSEPH DUDWOIRE, Appellant. — Appeal from a judgment of the County Court of Rensselaer County (Dwyer, Jr., J.), rendered September 1, 1982, upon a verdict convicting defendant of the crimes of burglary in the third degree and grand larceny in the third degree. The following evidence was presented by the prosecution's witnesses at defendant's trial: On May 15, 1982, at approximately 12:20 P.M., Robert Monticup and Cheryl De Mase returned home from doing some shopping and were about to pull into their driveway when they noticed two strangers, defendant and another young man, in the yard walking away from their house. They saw the second man dart toward a wooded area behind the house and throw into the woods a long, brown, thin object with a strap. Monticup drove up to the two men, pointed out that the land was posted, and then backed up and drove into his driveway. The two men started walking away rapidly. When Monticup got to the rear of his house, he found his back door open and its window broken. After telling De Mase to call the State Police, he ran after the two men. Not finding them immediately, he went back home and got his van and, a few minutes later, spotted them running across a nearby field. Monticup then met the police, and armed with his information, they apprehended the two men as they were coming out of the field. Monticup went home and checked his house and reported that he was missing a Civil War rifle and five bills: a brand new, uncirculated $100 bill, two $20 bills, and two other small bills (either two $10 bills, or a $10 bill and $5 bill). Monticup and State Police Investigator Bragin found the Civil War rifle in the woods near where Monticup had originally seen the two men. Defendant was advised of and

waived his *Miranda* rights. When Bragin then asked him how much money he had on him, defendant answered that he had about $10. He produced his wallet, which contained between $20 and $25, and said that was all he had. Five bills were then found folded together in defendant's watch pocket: a crisp, new $100 bill, two $20 bills, one $10 bill, and one $5 bill. When Bragin asked about this additional $155, defendant answered, "I forgot about that". Defendant claims that this circumstantial evidence did not present clear or adequate proof that he had actually entered Monticup's home or stole any property from it, and that the trial court therefore erred in denying his motion to dismiss the indictment at the end of the People's case. The inferences that defendant entered the house and stole the money and rifle, however, flow naturally from and are consistent with the circumstantial evidence presented, and the cumulative effect thereof was legally sufficient to make out a prima facie case (*People v Benzinger*, 36 NY2d 29, 32; *People v Gallo*, 75 AD2d 148, 152-153). Defendant next contends that the court erred in its *Sandoval* ruling, in which it was determined that a prior burglary conviction could not be used to impeach defendant's credibility because it was the same crime as the pending charge, but that a prior arson conviction could be used because it involved an arson for profit scheme, which would bear on issues of veracity and credibility. The court thus clearly and properly exercised its discretion and balanced the probative value of the evidence on defendant's credibility against the risk of prejudice to him (see *People v Williams*, 56 NY2d 236). We also hold that the court correctly allowed testimony regarding the money found in defendant's watch pocket. *People v Blanchard* (55 AD2d 968), relied upon by defendant, is clearly distinguishable from the instant case. In *Blanchard*, the victim was robbed of $59, in denominations of $1, $5, and $10. When the two defendants were stopped some 15 minutes after the robbery, between them they had in their possession $50 in the same denominations plus five $20 bills. In reversing the conviction, this court held that the money found on the two defendants was erroneously admitted into evidence because of the scant probative value of the defendants' combined possession of bills of such small denominations, the lack of any other evidence tending to show that these were the bills taken from the victim and the possibly prejudicial effect of admitting them in evidence. Here, however, the facts are significantly different. Defendant had a brand new $100 bill, an unusual circumstance in and of itself, folded together with four other bills in his front watch pocket. The separate denominations and the total amount of the bills were the same as those taken from Monticup, and the bills were in an unusual place on defendant's person and separate from the money in his wallet. Furthermore, defendant alleged that he had only $10 on him and, when confronted with this money in his watch pocket, merely claimed that he had "forgotten" about the additional $155. There was, thus, sufficient proof linking the $155 to the burglary victim for the probative value of defendant's separate possession of money in the same amount and denominations as the money stolen to substantially outweigh any risk of undue prejudice to defendant. Finally, we do not find that the sentences imposed on defendant as a second felony offender (3½ to 7 years for the burglary in the third degree and 1½ to 3 years for the grand larceny in the third degree, to run concurrently) were excessive. Judgment affirmed. Mahoney, P. J., Sweeney, Kane, Weiss and Levine, JJ., concur.