(June 21, 1984)

1. THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WILLIAM PEREZ, Appellant. — Judgment, Supreme Court, Bronx County (Maurice Grey, J.), rendered on December 18, 1981, affirmed. Concur — Murphy, P. J., Silverman, Lynch and Alexander, JJ.

Carro, J., dissents in a memorandum as follows: Defendant's conviction for attempted murder should be reversed and a new trial ordered on the count in the indictment charging assault in the first degree. While the victim's quite serious injury makes it inappropriate for us to ourselves reduce the conviction to attempted assault, the testimony of the victim establishes the strong probability that defendant only intended to frighten the man, but not harm him. ¶ The facts in this case can be summed up in this fashion: about one in the morning, in an after-hours club, a man went up to defendant and asked him for a light. Perez instead produced a rifle, saying, "This is a hold-up," and took two dollars and two tokens from the man's pockets. William Martell, the owner of the club, then walked up to see what was going on. Seeing the gun in defendant's hands, he exclaimed, "You got to be kidding." ¶ Defendant responded by picking up a pool stick and ordering Martell to go to the back of the club. Martell refused to move, so Perez swung the pool stick at him. Martell fended off the pool cue with his hand, so Perez grabbed his rifle, fired one shot into the ceiling and then pointed it at Martell's chest. Martell pushed the gun barrel away, too, and bolted through a nearby doorway, slamming the door behind him. *After* bending, fidgeting with the door lock and taking a step towards the back exit, Perez fired a shot through the just-slammed door. This shot struck Martell in the neck. ¶ Such was the chain of events comprising the incident. It should also be noted that Martell and defendant had known each other for more than 10 years. ¶ As I have emphasized in relating it, the victim — Martell — did not describe a conscious, intentional attempt at taking his life, but rather, a somewhat muddled robbery where the defendant grew increasingly nervous and frustrated from not being taken seriously. Had he had murder in his heart, Perez surely would have acted upon the several opportunities he had. Instead, he chose to swing a pool cue, to shoot into the ceiling and blindly shoot into a slammed door. It is difficult under these circumstances to infer any intent to actually inflict physical harm, much less, murderous intent. It is even more difficult to discern a difference, based upon the proof here, between the intent to kill required for attempted murder in the second degree and the intent to cause serious physical injury required for assault in the first degree. While "[t]he evidence, of course, must be viewed in the light most favorable to the People, since we must assume from the conviction that the jury credited the People's proof (see, e.g., *People v Benzinger,* 36 NY2d 29)" (*People v Bracey,* 41 NY2d 296, 302), where the evidence is "equally consistent with the two intents [it] may not form the basis for a finding against the defendant of the graver intent." (*People v Rodriquez,* 63 AD2d 919, 920.) ¶ In *Rodriquez* (*supra*), the defendant had fired a shot in the direction of a policeman who was interrupting defendant's attempted robbery of a subway token booth. Although the Trial Judge submitted to the jury a charge of attempted assault in the first degree, as a lesser included offense of attempted murder, the jury found defendant guilty of the higher crime. We reversed, noting that there was "nothing in the surrounding evidence to enable the jury to choose between the two intents and thus in order to find the graver intent rather than the lesser, 'the jury would have to resort to sheer speculation'." (63 AD2d, at p 920, quoting from *People v Bracey,* 41 NY2d 296, 302, *supra.*) The case at bar is controlled by and is, in fact, a stronger case than *Rodriquez.* This conviction should be reversed.