■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v KELMY RODRIGUEZ, Also Known as KELMY RODRIQUEZ, Appellant.—Judgment of the Supreme Court, New York County (Frederic Berman, J.), rendered May 6, 1986, after a jury trial, which convicted defendant Kelmy Rodriguez of manslaughter in the first degree (Penal Law § 125.20 [1]) and criminal possession of a weapon in the second degree (Penal Law § 265.03), and which sentenced him to concurrent indeterminate terms of imprisonment of from 8⅓ to 25 years for manslaughter and 5 to 15 years for weapon possession, unanimously modified on the law, to the extent of reducing the conviction of manslaughter in the first degree to manslaughter in the second degree (Penal Law § 125.15 [1]), and reversing the conviction of second degree weapon possession and remanding for a determination as to whether that conviction should be reduced to criminal possession of a weapon in the third degree (Penal Law § 265.02 [see, subds (1), (4)]), or to criminal possession of a weapon in the fourth degree (Penal Law § 265.01 [1]), and the matter is additionally remanded for resentencing, and except as so modified, affirmed.

The central question upon this appeal is whether the People

in obtaining defendant's conviction of manslaughter in the first degree proved as they were required to that defendant intended to cause serious injury to the homicide victim, defendant's wife Zaida Rodriguez.

The relevant facts are substantially undisputed. The defendant and his wife did not have a happy marriage and defendant was from time to time ordered by his wife to leave their apartment. On the day prior to the incident which gave rise to the within prosecution, the defendant returned home after an overnight absence. A neighbor testified to observing a gun in defendant's waistband and defendant's son testified that he observed his father put a bullet in the gun. Defendant left the apartment without incident but returned the next morning. None of the trial witnesses except the defendant observed what then occurred between he and his wife. Apparently, the two were overheard arguing loudly and after some time Zaida twice exclaimed "Kelmy, no". There followed either 1 or 2 gunshots. The defendant left the apartment immediately and went directly to the police station. Upon entering the station he announced that he had just shot someone and wanted to give himself up. Defendant testified that he had argued with Zaida and that during the argument Zaida had taken a gun from under a cloth on the refrigerator. According to defendant, a struggle ensued in the course of which the gun accidentally discharged. Zaida was wounded in the chest and died 12 days after the shooting from damage the bullet caused her heart. When Zaida was found in the apartment shortly after the shooting she revived briefly and reportedly said, "He shot me in the heart." Gunpowder burns were found on Zaida's clothing in the vicinity of the wound indicating that the gun discharged in close proximity to the victim.

Viewing the evidence as we must on appeal, in the light most favorable to the prosecution (see, e.g., People v Benzinger, 36 NY2d 29, 32; People v Montanez, 41 NY2d 53, 57), we are nevertheless unable to conclude that the People have met their burden of proving the degree of culpability necessary to sustain defendant's convictions. While it would appear clear that defendant shot Zaida Rodriguez, it is impossible to tell from the record whether he did so intentionally or, as he claims, by accident. Neither the defendant's statement that he had shot someone, nor the victim's that she had been shot in the heart shed light on whether the shooting was deliberate. (See, People v Guarino, 56 AD2d 638.) Similarly unilluminating is the defendant's reported possession of a gun on the day before the shooting. The gun from which the fatal shot was

fired was never found and there is no way of knowing whether it was the same gun defendant was seen with the preceding day. Moreover, even if it had been the same gun there would still exist an open question as to whether it had been used intentionally. While crediting all of the People's witnesses, we are unable to exclude the hypothesis that the gun was accidentally discharged as the couple fought. Certainly, the powder burns on the victim's clothing are consistent with such a theory as is the fact of defendant's prompt surrender. The continuing viability of defendant's contention that the shooting was accidental prevents us from concluding that the People have proven the intent element of the crime here at issue beyond a reasonable doubt. Accordingly, we think it appropriate to reduce defendant's conviction of first degree (i.e., intentional) manslaughter to the lesser included offense (see, People v Green, 56 NY2d 427; People v Morton, 100 AD2d 637) of second degree (i.e., reckless) manslaughter. Although the evidence does not show whether defendant's shooting of his wife was accompanied by specific intent to cause serious physical injury, it is adequate to demonstrate that defendant engaged in a fight with his wife when either he or she was armed, and that at some point during the struggle defendant, although he came to brandish the weapon, continued to fight despite Zaida's entreaty to stop, with the tragic consequence of the gun's fatal discharge. We think that this course of conduct sufficiently bespeaks recklessness as that term is defined by statute (Penal Law § 15.05 [3]) to sustain a conviction of manslaughter in the second degree (Penal Law § 125.15 [1]; see, People v Guarino, supra; see also, People v Garcia, 64 AD2d 555).

Turning now to defendant's conviction of criminal possession of a weapon in the second degree (Penal Law § 265.03), it appears that that conviction too must be reduced since the People have not established an element of the offense, i.e., that defendant possessed the gun involved in the incident with the intention of using it unlawfully against his wife. Although it is clear that the conviction must be reduced, it is not clear what it should be reduced to. We, therefore, reverse and remand the weapon possession count for further proceedings to determine whether the reduction should be to criminal possession of a weapon in the third degree (Penal Law § 265.02 [either subd (1) or (4)]), or criminal possession of a weapon in the fourth degree (Penal Law § 265.01 [1]).

We have examined the other points raised on the appeal

and find them to be without merit. Concur—Murphy, P. J., Kupferman, Ross, Ellerin and Wallach, JJ.