THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v TERRY ANGEL, Appellant.

First Department, June 28, 1990

## APPEARANCES OF COUNSEL

*Paul Harnisch* of counsel *(Susan Corkery* with him on the

brief; *Robert M. Morgenthau, District Attorney,* attorney), for respondent.

*Karen M. Kalikow* of counsel *(Philip L. Weinstein,* attorney), for appellant.

### OPINION OF THE COURT

SMITH, J.

In this appeal of a murder conviction, we conclude that the judgment must be reversed and the indictment dismissed. No evidence placed the defendant in the apartment at the time of the assault or led to the conclusion that he had assaulted the deceased.

During the course of a burglary of a West 146th Street apartment, occurring sometime before 5:00 A.M. on June 13, 1985, Walter Grant, an occupant of the apartment, was beaten across the head with a hammer. Grant, who was 62 years of age, was hospitalized for a fractured skull, severe head trauma and resulting medical complications. Following numerous surgical procedures, Grant eventually slipped into a coma and, on November 2, 1985, died.

The defendant Terry Angel and Ronald Reed were arrested on a nearby street corner on the evening of the crime. By indictment filed on June 21, 1985, both were charged with burglary in the second degree, assault in the first degree and criminal possession of stolen property in the second degree. On July 17, 1985 Reed entered a negotiated plea of guilty to attempted burglary in the first degree in exchange for his promise to testify against the defendant at trial, a promise upon which he reneged. In July of 1986 that indictment was dismissed against the defendant on his speedy trial motion (CPL 30.30) (Rene Uviller, J., July 24, 1986).

By the instant indictment, filed on December 5, 1986, the defendant was charged with four counts of murder, second degree (Penal Law § 125.25 [1], [2], [3] [two counts]) in connection with the death of Grant. Reed testified against the defendant before a Grand Jury. In March of 1987, Raymond Abney was arrested and also indicted for two counts of felony murder (Penal Law § 125.25 [3]), as well as for the underlying crimes of robbery and burglary in the first degree. The indictments against the defendant and Abney were subsequently consolidated for trial, which commenced November 13, 1987. A jury found the defendant guilty of two counts of felony

murder, the only counts submitted as to him. The jury found Abney guilty of all four counts charged against him.

On this appeal the defendant argues, *inter alia,* that in this wholly circumstantial case the People's evidence failed to establish beyond a reasonable doubt either his participation in the burglary and robbery underlying his felony murder convictions, or that the head injuries inflicted during the burglary caused Grant's death.

The People's principal witness at trial was the victim's live-in girlfriend, Rosa Robinson Cody. In the two days prior to the homicide, Cody and Grant had argued and, as a result, her presence in the apartment during that period was intermittent. Cody testified that sometime after 3:00 A.M. on June 13, 1985, she encountered Reed, Abney and the defendant, all of whom she knew, across the street from Grant's apartment building, on 146th Street and Amsterdam Avenue. Reed and Abney were carrying a television covered by a bed sheet. The defendant was walking next to them carrying a paper bag.* When Cody approached the men, defendant said to her, "Everything is all right." She then followed the three men to a game room, alleged to be a "crack house", where she observed that the television looked like the one belonging to Grant. The defendant turned and said something to Reed, who then started towards Cody. She ran from the game room. Cody returned to the apartment, noticed the door ajar, the apartment in disarray, the television and a brown paper bag of coins missing, and Grant bloodied and semiconscious in the back bedroom. She alerted Eugene Wilkerson, who was residing in the apartment, and summoned the police.

Eugene Wilkerson, a marital relation of Grant, who had been living with Grant for a short period, testified that he was asleep in the front bedroom of the apartment with his television playing when at about 4:00 A.M. on June 13 he was awakened by a crashing sound coming from an adjacent staircase. Wilkerson testified as to the characteristics of the television set taken from the living room and that he had accompanied Grant to purchase the set in early June.

The People's other witnesses were Grant's physician, the Medical Examiner and investigating officers. Fingerprints

---

* Before a June 1985 Grand Jury, Cody testified that Angel and Reed carried the television, while Abney walked behind them. Before a November 1986 Grand Jury, she stated that Abney and the defendant carried the television and Reed carried the brown paper bag.

found in the apartment did not match those of the defendant, Reed or Abney. After Reed on at least five occasions, by means of either his own sworn testimony or through assigned counsel, advised the court that he did not intend to testify at the defendant's trial and was adjudged to be in contempt, the court allowed in evidence a redacted version of Reed's July 1985 plea allocution. Motions by counsel for both defendants to preclude the use of Reed's plea allocution were denied. Thereafter, they and the Assistant District Attorney agreed upon the redacted version which was to be read into evidence. The trial court then stated the following to the jury:

"THE COURT: Ladies and gentlemen, a stipulation has been entered into between the parties that the following was what is known as a plea allocution of a person by the name of Ronnie Reed.

" 'THE COURT: You pled guilty to Attempted Burlary in the First Degree. Did you enter into an apartment without permission or consent of the owner or occupant of that apartment?

" 'DEFENDANT REED: Yes, I did your Honor.

" 'THE COURT: And how did you get into that apartment?

" 'DEFENDANT REED: Through a window. Through a window.

" 'THE COURT: Through a window? And where was this building located?

" 'DEFENDANT REED: 126th [sic] and Amsterdam.

" 'THE COURT: And after you got into that apartment without permission or consent of the owner or occupant of this apartment, did you intend to commit a crime inside this apartment?

" 'DEFENDANT REED: Yeah.

" 'THE COURT: What crime? What did you intend to do?

" 'DEFENDANT REED: Rob.

" 'THE COURT: You mean take property?

" 'DEFENDANT REED: Yes, sir.

" 'THE COURT: While you were inside this apartment was the occupant or the owner or the resident of this apartment present in the bedroom?

" 'DEFENDANT REED: Yes.

" 'THE COURT: Was he assaulted?

" 'DEFENDANT REED: Yes, sir.

" 'THE COURT: And how was he assaulted?

" 'DEFENDANT REED: Beat up, he was.

" 'THE COURT: Hit on the head with an instrument?

" 'DEFENDANT REED: Yes, sir.

" 'THE COURT: What was the instrument?

" 'DEFENDANT REED: A hammer.

" 'THE COURT: Hammer?

" 'DEFENDANT REED: Yes.' "

Thereafter, the court advised the jury that the allocution was received solely for the purpose of establishing that there was a burglary of the Grant apartment on June 13, 1985, and that at that time there was an assault upon Mr. Grant with a hammer.

Neither the defendant nor Raymond Abney presented any witnesses.

The defendant's conviction should be reversed. "Viewing the evidence, as we must, in a manner most favorable to the prosecution and indulging in all reasonable inferences in the People's favor" *(People v Ford,* 66 NY2d 428, 437 [1985], citing *People v Malizia,* 62 NY2d 755; *People v Benzinger,* 36 NY2d 29), we conclude that the evidence was inadequate to support defendant's convictions of felony murder. In this wholly circumstantial case, the evidence does not exclude every reasonable hypothesis of innocence. *(People v Sanchez,* 61 NY2d 1022, 1024 [1984]; *People v Ford,* 66 NY2d 428 [1985]; *People v Benzinger,* 36 NY2d 29, 32 [1974], *supra.)*

Critically absent from the evidence is any proof that the defendant was either Reed's accomplice in the burglary or that he committed the assault. Indeed, the only direct evidence linking defendant with the burglary was Cody's testimony that the defendant was with Reed and Abney while they carried a television apparently belonging to Grant and that he engaged in a discussion with someone in a game room. Defendant's statement to Cody that "everything is all right" is inconclusive as to his guilty knowledge of the burglary or assault.

Examining the proof as a whole, a reasonable inference could be had, consistent with the defendant's innocence of felony murder, that he knowingly possessed stolen property and that Reed alone or with other(s) burglarized the apartment and assaulted Grant.

It is noted that recent, exclusive and unexplained or falsely explained possession of the fruits of a crime justifies, but does

not require, the inference that the possessor was the thief. However, this inference does not dilute the People's burden of establishing each element of each crime beyond a reasonable doubt. *(People v Galbo,* 218 NY 283, 290 [1916]; *People v Baskerville,* 60 NY2d 374, 382-383 [1983].) In this wholly circumstantial case, the facts and inferences drawn must be so reasonable that they cannot be confused with mere conjecture or suspicion. *(People v Castillo,* 47 NY2d 270, 277 [1979].)

Thus, the trial court correctly charged the jury that "recent exclusive and conscious possession, actual or constructive of the fruits of a crime, stolen property, if unexplained or falsely explained justifies * * * but does not require the inference that the possession was criminal," and that criminality in the context of this case was "criminal possession of the stolen property, burglary or robbery." *(See, People v Baskerville,* 60 NY2d 374, 383 [1983].) In explaining the elements of the felony murder, the court discussed the necessity for first finding a robbery, burglary or attempt thereof, However, the court should have explained to the jury at this point in the charge that if in employing the inference it concluded that the defendant was guilty only of possessing stolen property, an uncharged crime, it must acquit him of the felony murder counts.

Accordingly, judgment, Supreme Court, New York County (Shirley Levittan, J.), rendered February 3, 1988, which, following a jury trial, convicted defendant of two counts of murder in the second degree (Penal Law § 125.25 [3]) and sentenced him to concurrent indeterminate terms of imprisonment of 20 years to life, should be reversed, on the law, and the indictment dismissed.

SULLIVAN, J. P., ASCH, KASSAL and RUBIN, JJ., concur.

Judgment, Supreme Court, New York County, rendered on February 3, 1988, unanimously reversed, on the law, and the indictment dismissed. The matter is remitted to the trial court for the purpose of entering an order in favor of the accused pursuant to CPL 160.50, not less than 30 days after service of a copy of this court's order upon the respondent, with leave during this 30-day period to respondent to move and seek any further stay of the implementation of CPL 160.50 as in the interest of justice is required.