■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v BRIAN A. SCOTT, Appellant.—Appeal by the defendant from a judgment of the County Court, Suffolk County (Tisch, J.), rendered May 4, 1988, convicting him of attempted murder in the second degree, burglary in the first degree and assault in the first degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment is reversed, on the law, the indictment is dismissed, and the matter is remitted to the County Court, Suffolk County, for the purpose of entering an order in its discretion pursuant to CPL 160.50.

At approximately 11:00 A.M. on January 29, 1987, the victim was taking a shower in her house when she noticed a shadow through the sliding glass door to the shower. She saw a man who she described as between five feet two inches and five feet four inches tall. He was wearing dark clothes and had a

pillowcase over his head. She attempted to close and lock the bathroom door, but the man stuck his foot in the door. He wedged a baseball bat in the door, pushed it open, and dragged the victim into a dressing room. He then began choking her, and struck her on the head with the bat.

As she was becoming unconscious, the victim glimpsed her assailant, but never really saw his face. She described him further as a clean shaven, light skinned black or Hispanic man. Several weeks later, the victim viewed two lineups which included the defendant, but on each occasion, she picked someone other than the defendant as her assailant.

No other witnesses observed the defendant at the scene of the crime. A neighbor who lived across the street saw someone in dark clothing walk up the driveway of the victim's house, at about 11:00 A.M. She saw him from behind but could not describe his height, or provide any other details about his appearance. One other witness, who had known the defendant for about 14 years, observed him 30 to 40 minutes before the attack took place. He further testified that it would take over one half hour to walk from where he observed the defendant to the victim's house.

The only other evidence offered to establish the defendant's presence at the scene of the crime was an impression made by a sneaker that was found in the snow, near the point of entry, but outside the victim's house. An expert testified that a comparison of the length, width and tread pattern of a pair of sneakers obtained from the defendant was consistent with the same characteristics of the print found in the snow. However, there was a ¾ inch discrepancy between the length of the print and the sneaker. Thus, the expert could not say absolutely that the defendant's sneaker had made the print. In any event, the evidence indicated that the defendant's sneakers were not unique, as there were hundreds of pairs of similar brand and size.

We agree with the defendant's contention that the evidence, when viewed in the light most favorable to the People *(see, People v Contes,* 60 NY2d 620), was not legally sufficient to prove his guilt beyond a reasonable doubt. In order to establish a defendant's guilt beyond a reasonable doubt on the basis of exclusively circumstantial proof, " 'the hypothesis of guilt should flow naturally from the facts proved, and be consistent with them; and the facts proved must exclude "to a moral certainty" every hypothesis of innocence' " *(People v Piazza,* 48 NY2d 151, 158, quoting from *People v Benzinger,* 36 NY2d

29, 32; *People v Collins,* 150 AD2d 476). Here, the inference of the defendant's guilt depended upon speculation and did not flow naturally and logically from the facts proven. Accordingly, we must reverse the conviction and dismiss the indictment.

In light of this determination, we need not address the defendant's remaining contentions. Bracken, J. P., Kooper, Miller and Ritter, JJ., concur.