[667 NYS2d 36]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CARLOS CANTRES, Appellant.

First Department, December 30, 1997

## APPEARANCES OF COUNSEL

*Olga L. Torres* of counsel *(Richard M. Greenberg,* attorney), for appellant.

*Leslie Catherine Perrin* of counsel *(Allen H. Saperstein* on the brief; *Richard T. Johnson, District Attorney* of Bronx County, attorney), for respondent.

## OPINION OF THE COURT

COLABELLA, J.

The decedent was shot to death at point-blank range in the eighth floor front stairwell of the housing project at 560 Balcolm Avenue at about 3:30 A.M. on April 16, 1992. There were no witnesses to the shooting and the weapon was never recovered. The proof that defendant was the perpetrator was entirely circumstantial. In issue on appeal is whether defendant's conviction was supported by legally sufficient evidence and, if so, whether the verdict was nonetheless against the weight of the evidence. We answer the first question in the affirmative and the second question in the negative.

### I

Defendant, the decedent and the People's chief witnesses, Lehra Brooks and Warren Coles, were each residents of 560 Balcolm Avenue. Brooks testified that she returned to the building at about 3:30 A.M. She rode up in the elevator to her floor with defendant and another tenant, Alex Bland, each of whom she had known for more than 10 years.

Upon exiting on the eighth floor, Brooks saw Coles standing inside the front stairwell, directly in front of the elevator, holding what appeared to be a bag of garbage, talking to the decedent. The elevator door closed and the elevator continued up with defendant and Alex Bland.[1] Brooks turned right and proceeded down the hallway past Coles and the decedent, then turned left toward her apartment, moving quickly because she

---

1. Brooks initially described the speed of the elevator as "pretty fast". At another point, Brooks indicated that she was unsure of the time it took between the first and eighth floors. When pressed, she said "five minutes, *if that long*" (emphasis added). Still later, she emphasized her estimate of the latter was only an approximation.

had to go to the bathroom. She unlocked the door, stepped inside and, as she was closing the door, she heard a loud "boom" that sounded like a gunshot. Brooks called the housing police, who arrived in approximately five minutes.

Coles testified he arrived at 560 Balcolm Avenue at about 3:00 A.M. and saw defendant and Melvin Bland, Alex Bland's cousin, standing in front. Coles approached defendant, gave him five dollars, and asked him for drugs, something he had done before, although he admitted that defendant was not a drug dealer.[2] Defendant showed Coles a gun with a short curved or hooked handle in the inner pocket of his jacket. Coles then entered the building, rode the elevator to his apartment on the eighth floor, went back out into the hallway to throw out garbage and met the decedent at the front stairwell.

Coles testified that, when the elevator opened, he saw defendant and asked him for his drugs. Defendant failed to respond and the elevator door closed, continuing upward. Coles claimed he then ran upstairs to the ninth floor, met defendant getting off the elevator and asked defendant again for his drugs. Melvin and Alex Bland were also on the ninth floor.

Coles testified that defendant told him to get away, brushed past him, putting his hand inside his jacket where Coles had previously seen a gun, "fumbling around", and walked toward the front stairwell.[3] Coles was headed down the back staircase with Alex and Melvin Bland when he heard a shot.[4] Coles ran to his apartment and, as he passed the front stairwell, he saw the decedent's body.

Police Officer Mazzella testified that the police arrived at the scene at about 3:50 A.M. and found the decedent lying face up in the eighth floor stairwell, directly across from the elevator, with a gunshot wound to the face. The Medical Examiner testi-

---

2.  Prior to seeing defendant, at around 1:00 A.M., Coles shared a 40-ounce bottle of beer with a co-worker. At 2:00 A.M., on his way home, he bought and smoked two vials of crack.

3.  Coles testified as follows:

"Q: * * * [P]rior to going down [the back stairwell], did you see the direction where [defendant] was going?

"A: Yes * * * The front.

"Q: * * * [W]hile you were * * * in one stairwell, [defendant] was in the direction of the other, is that correct?

"A: Yes.

"Q: When you saw [defendant] fumbling around, he went down the stairwell where [the decedent] was; is that correct?

"A: Yes."

4.  The two stairwells were separated by a wall.

fied that the decedent died from a single shotgun blast, fired either inside the mouth or right up against the corner of the mouth.

Steven Wise, who was housed with defendant at the Bronx House of Detention after his arrest, testified he was a family friend of the decedent and sought out defendant when he learned defendant was arrested for the murder. According to Wise, defendant told him the decedent owed him $15, that he did not like the decedent's behavior around the building and that he had confronted the decedent about the money. When Wise asked about the decedent's injuries, defendant told Wise words to the effect that the "whole neck was blown off."

In addition, the People introduced, as evidence of consciousness of guilt, testimony that defendant appeared at the crime scene minutes after the shooting in different clothes, that at some point, after the murder, he left for Puerto Rico and that he changed his appearance by shortening and darkening his hair.[5] The defense did not call any witnesses.

Defendant was convicted, based on the foregoing, of murder in the second degree. We now affirm.

## II

In reviewing the legal sufficiency of the trial evidence, the court must "determine whether any valid line of reasoning and permissible inferences could lead a rational person to the conclusion reached by the fact finder on the basis of the evidence at trial, viewed in the light most favorable to the People" (*People v Williams*, 84 NY2d 925, 926). In a case based solely on circumstantial evidence, the verdict must be strictly scrutinized "to ensure that the jury has not relied upon equivocal evidence to draw unwarranted inferences or to make unsupported assumptions (*People v Kennedy*, 47 NY2d 196, 201; *People v Benzinger*, 36 NY2d 29, 32)" (*People v Way*, 59 NY2d 361, 365). The trier of fact may not "leap logical gaps in the proof offered and draw unwarranted conclusions based on probabilities of low degree" (*People v Benzinger*, 36 NY2d 29, 32, *supra*).

. Contrary to the view of defendant, the evidence in this case established more than defendant's mere presence near the scene of the crime. Viewed in the light most favorable to the People, the evidence established that defendant had the op-

---

5. Alex and Melvin Bland did not testify at the trial although the People made efforts to subpoena them.

portunity to kill the decedent, that he was armed and that there was animosity between defendant and the decedent. In addition, given the close proximity of the elevator to the front stairwell and the marked direction of defendant's movement toward the front stairwell, there was a reasonable view of the evidence from which the jury could infer that defendant entered the front stairwell. Considering the brief period between defendant's entry into the stairwell and the absence of evidence that anyone else was in the stairwell with the decedent at the time of the shooting, there was also a reasonable view of the evidence from which to infer that defendant was the perpetrator. The evidence, therefore, was legally sufficient to establish defendant's guilt beyond a reasonable doubt (*see, People v Ruiz*, 211 AD2d 829; *see also, People v Williams*, 84 NY2d 925, *supra; cf., People v Montalvo*, 183 AD2d 528; *People v Washington*, 157 AD2d 872).

## III

In reviewing whether defendant's conviction was against the weight of the evidence, the threshold inquiry is whether, based on all the credible evidence, a different finding would have been reasonable. If so, "the appellate court must, like the trier of fact below, 'weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony' [citations omitted]. If it appears that the trier of fact has failed to give the evidence the weight it should be accorded, then the appellate court may set aside the verdict (CPL 470.20 [2])." (*People v Bleakley*, 69 NY2d 490, 495.) In this case, as discussed below, even if a different result might have been reasonable on the same evidence, defendant has failed to show the jury failed to give appropriate weight to the evidence in convicting defendant.

First, defendant argues that the jury failed to consider the discrepancy between Coles and Brooks as to the time involved between the elevator opening on the eighth floor and the shooting. According to defendant, the events described by Coles could not have taken place in the "few seconds" described by Brooks. We disagree.

Brooks did not define what she meant by "a few seconds." She also made clear that her statement was merely an approximation and that she had not paid attention to the time. Notably, the sequence of events described by Coles was rapid as well. While Brooks "walked" down the corridor to her apartment, Coles "ran" up the front stairwell, which was directly

across from the elevator. It was entirely reasonable, therefore, for the jury to credit both accounts (see, *People v Jackson*, 65 NY2d 265, 272).

Second, defendant argues that Brooks and Coles were inconsistent in their testimony as to whether it was Alex or Melvin Bland who was with defendant in the elevator. This inconsistency on a collateral fact is immaterial and more likely reflects the difference in their respective opportunities at viewing than indicates an effort at fabrication by Coles. Coles identified Melvin Bland as the person with defendant on the elevator based solely on his momentary view of the elevator opening on the eighth floor and at a time when his focus was on defendant. Brooks, by contrast, was with the person in the elevator she identified as Alex Bland for the entire ride from the first to the eighth floor. Brooks had also known Alex Bland for a number of years, whereas Coles had previously seen Melvin Bland on less than five occasions.

Third, defendant asserts that Coles's testimony conflicted with Brooks's testimony because she did not hear Coles question defendant when the elevator opened on the eighth floor, see or hear Coles run up to the ninth floor, or see anything on defendant resembling a weapon although she stood in close proximity with defendant for five minutes on the elevator. Brooks, however, never testified that these things did not occur.

Brooks's failure to notice any of the foregoing is consistent with her testimony that she was preoccupied with getting to her apartment. Likewise, her failure to see or hear Coles run up the stairs is consistent with the fact that she had her back to Coles as she proceeded down the hallway to her apartment; her failure to see a weapon on defendant is consistent with Coles's testimony that the gun was hidden inside defendant's jacket.[6]

Fourth, defendant argues that Coles's testimony should be disregarded based on his questionable character and his possible motivation to avoid prosecution for the murder. Clearly, Coles's admission that he had been drinking and using drugs prior to the murder, as well as his possible motivation for fabrication, are relevant in assessing his veracity. Coles was the last one seen by Brooks with the decedent in the stairwell, making him a prime suspect in the murder. Coles's capacity as a witness to recall events as well as his possible motivation to

---

6. According to Brooks, the jacket was only "partially" open.

lie, however, were before the jury and presumptively were considered by the jury in assessing his credibility. The jury was entitled to find that he was nonetheless a credible witness and defendant has shown no basis, apart from speculation, for the court to interfere with that assessment (*People v Scoggins*, 227 AD2d 204, *lv denied* 88 NY2d 994; *People v Streeter*, 169 AD2d 636, *lv denied* 77 NY2d 967; *People v Blanco*, 158 AD2d 347, *lv denied* 76 NY2d 731).

Fifth, defendant argues that Wise should have been discounted as a career criminal with a possible motivation to provide information in order to obtain favorable treatment in his own pending criminal case. Neither Wise's background nor a hope of receiving leniency, however, rendered his testimony incredible as a matter of law. These facts were before the jury and were presumptively considered by the jury (*People v Dellamore*, 182 AD2d 596, 597, *lv denied* 80 NY2d 928; *People v Scoggins*, *supra*, at 204).

Lastly, defendant argues that the evidence that defendant knew of the decedent's injuries, that defendant changed his appearance and that he left the State was equivocal. Concededly, the foregoing, by itself, might have an innocent explanation, but that possibility did not preclude a different assessment by the jury in considering such evidence along with all the other evidence in the case. There is also no basis, in light of the other proof, from which to conclude that such evidence played any significant role in the jury's determination.

Accordingly, the judgment of Supreme Court, Bronx County (Martin Marcus, J.), rendered July 18, 1995, which convicted defendant, after a jury trial, of murder in the second degree, and sentenced him to an indeterminate sentence of 25 years to life, should be affirmed.

MURPHY, P. J. (dissenting). Although I agree with the majority that the evidence is sufficient as a matter of law to support the conviction, I cannot agree that the conviction accords with the weight of the evidence.

The crucial facts would appear to me to be these: Ms. Brooks, a completely disinterested witness, testified that during the minutes preceding the shooting she rode with the defendant to the eighth floor of the building in which they both lived. When the elevator door opened, Ms. Brooks observed the victim in conversation with the main prosecution witness, Coles. Ms. Brooks got out of the elevator, leaving the defendant behind, and walked to her apartment quickly; she remembered that

she walked quickly because she had to go to the bathroom. As she entered her apartment she heard a gunshot, presumably the shot that took the victim's life. Reduced to its essentials, the scenario advanced by the prosecution in reliance upon Coles's testimony was that in the very brief interval between Ms. Brooks's alighting from the elevator and her arrival at her apartment, the defendant rode in the elevator up to the ninth floor, got out and ran down the hall to the stairwell, descended to the eighth floor landing, inserted a shotgun into the victim's mouth and shot him. With all due respect to the majority, this does not seem to me a probable scenario. Indeed, it seems highly improbable and is particularly suspect given its testimonial source, Coles. Coles, who was admittedly intoxicated during the events in question, having recently consumed 40 ounces of beer and two vials of crack, had a clear motive to fabricate; in the absence of evidence implicating someone else in the shooting he would have been the most likely suspect. He had, after all, been seen with the victim just moments before the fatal shot was fired.

Although the majority does not rule expressly upon the point, it is clear that this is a case in which there is a reasonable view of the evidence supportive of an outcome contrary to that reached by the trier of fact and, accordingly, that this Court's unique obligation to " 'weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony' " (*People v Bleakley*, 69 NY2d 490, 495, quoting *People ex rel. MacCracken v Miller*, 291 NY 55, 62) has been triggered. As a preliminary matter relevant to the discharge of that obligation, I note that although it is initially the fact finder's prerogative to weigh the evidence and make credibility determinations, and although a large measure of deference is generally due the fact finder on appellate review, weight of the evidence review entails some, albeit circumspect (*People v Bleakley, supra* at 495), displacement of the fact finder by an intermediate appellate court: "To determine whether a verdict is supported by the weight of the evidence, however, the appellate court's dispositive analysis is not limited to that legal test [legal sufficiency]. Even if all the elements and necessary findings are supported by some credible evidence, the court must examine the evidence further. If based on all the credible evidence a different finding would not have been unreasonable, then the appellate court must, *like the trier of fact below*, 'weigh the relative probative force of conflicting testimony and

the relative strength of conflicting inferences that may be drawn from the testimony' [citations omitted]. If it appears that the trier of fact has failed to give the evidence the weight it should be accorded, then the appellate court may set aside the verdict (CPL 470.20 [2])" *(supra,* at 495 [emphasis added]).

The careful discharge of our duty in this case to afford the defendant an appellate review of the factual predicate offered in support of his conviction leads, I believe, to the conclusion that the verdict did not comport with the weight of the evidence. The inculpatory tale told by Coles was inherently improbable; it strains credulity beyond breaking to believe that the defendant did all that Coles said he did within the narrow time frame so convincingly established in the testimony of Ms. Brooks. Indeed, it is only by preferring the testimony of Coles, a witness whose credibility was suspect on numerous serious counts, to that of Ms. Brooks, a completely disinterested witness with an evidently clear and specific recollection of the crucial circumstance that, for a very convincing reason, she moved speedily between the elevator and her apartment, that one might harmonize the evidence with the verdict. Yet, it would seem to me that it is precisely such an artificially and irrationally selective view of the evidence that our weight of the evidence review power exists to curtail.

Accordingly, the conviction should be reversed and the indictment dismissed.

WALLACH, NARDELLI and TOM, JJ., concur with COLABELLA, J.; MURPHY, P. J., dissents in a separate opinion.

Judgment, Supreme Court, Bronx County, rendered July 18, 1995, affirmed.