Angelo FRATARCANGELO, Petitioner-Appellant,

v.

Harold J. SMITH, Superintendent of Attica Correctional Facility, Respondent-Appellee.

No. 591, Docket 85–2057.

United States Court of Appeals, Second Circuit.

Argued Dec. 9, 1985.

Decided June 2, 1986.

Faith A. Seidenberg, Syracuse, N.Y. (Seidenberg and Strunk, Syracuse, N.Y., on brief), for petitioner-appellant.

Andrea Green, Asst. Atty. Gen., Albany, N.Y. (Robert Abrams, Atty. Gen. and Robert Hermann, Sol. Gen., Albany, N.Y., of counsel), for respondent-appellee.

Before VAN GRAAFEILAND, NEWMAN and MINER, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

Angelo Fratarcangelo appeals from an order of the United States District Court for the Western District of New York (Telesca, J.) denying his petition for a writ of habeas corpus. We affirm.

In the early morning hours of August 1, 1976, after drinking at a local bar, petitioner Fratarcangelo went to a party at a neighbor's apartment. Petitioner stayed for a couple of hours, drinking several beers while there. Eventually, he left to go next door to his own apartment, where a quarrel ensued between him and his wife. After a short time, Fratarcangelo returned to his neighbor's apartment carrying a .44 calibre revolver.

As he entered the apartment, petitioner fired a shot into the hallway ceiling. In an attempt to keep petitioner from proceeding to the kitchen where members of the group were cooking breakfast, David Ross, one of the party-goers, stood in petitioner's path. When Ross indicated that he would not allow petitioner to pass, petitioner shot him in the stomach. Linda Southard, one of the kitchen group, peered through a doorway to investigate the commotion, and Fratarcangelo fired a shot which barely missed her. When Roy Pace, a long-time friend of petitioner, asked him why he had shot Ross, Fratarcangelo shot him in the stomach as well.

Petitioner's wife then arrived on the scene and pleaded and struggled with her husband in an attempt to disarm him. During the struggle he stated several times that he was going to kill her. At some point, however, she convinced petitioner to go back to their own apartment. While those remaining at the scene were telephoning for assistance, they heard two shots from next door. When the police arrived at petitioner's apartment, they found his wife dead on the floor.

They found Fratarcangelo with a gun in his hand sitting in the bedroom of a vacant apartment in the same building. One of the officers who knew Fratarcangelo persuaded him to come out, which he did slowly, aiming his pistol at the policeman the whole time. When Fratarcangelo was within two or three feet, the officer wrested the gun from him.

An autopsy of Mrs. Fratarcangelo revealed that she had been shot twice. The first shot was not fatal but was sufficient to fracture the victim's left pelvic bones and knock her to the floor. The second, which severed her aorta, was fatal. Fortunately, both Ross and Pace survived their injuries.

After a jury trial before Judge Purple in Steuben County Court, Fratarcangelo was convicted of Second Degree Murder, two counts of Attempted Murder in the Second Degree, and one count of Reckless Endangerment in the First Degree. The Appellate Division, Fourth Department, affirmed, 77 A.D.2d 820, 431 N.Y.S.2d 606 (1980), and leave to appeal to the New York Court of Appeals was denied, 53 N.Y.2d

707, 439 N.Y.S.2d 1035, 422 N.E.2d 588 (1981).

Because there never was any question that appellant shot the three victims and shot at the fourth, the only real issue on the trial was whether he was too intoxicated to form the necessary intent for the crimes. Accordingly, the trial judge charged at some length on the question of intent, beginning with the count of Second Degree Murder. He began this portion of his instructions as follows:

> Before you, considering all the evidence, can convict the defendant of Murder in the Second Degree you must believe and decide that the People have established beyond a reasonable doubt that the defendant, Angelo Fratarcangelo, intended to shoot Joyce Fratarcangelo to kill her; but intent to injure, to hurt, to harm without the intent to kill is not enough for Murder. There can be no Murder unless the killer intended to cause some person's death. To find that such intention you must come to the conclusion that it was his conscious objective to cause death; that his act or acts resulted from that conscious objective. If you find no such intent to kill; if for example, you find an intent to injure without the intent to kill or if you find that the defendant, Angelo Fratarcangelo, was in such a state of intoxication as to be unable to form the specific intent to kill then you must consider one or more of the lesser degrees of Manslaughter, the nature and requirements of which I shall summarize for you. How do you determine intent. Intent is, of course, a question of fact before the jury. I charge you that a man is presumed to intend the ordinary and natural consequences of his acts.

If the judge had stopped at that point, petitioner's argument that *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), mandates the granting of a writ might have merit. However, the judge did not stop there. Immediately following the single sentence upon which petitioner bases his claim for reversal, the court continued:

> In other words, it is not necessary to show a man's intent by his own statement. It may be inferred from his conduct. We cannot probe into a man's mind and extract his intention at the time of the commission of the crime so we must rely upon the facts and circumstances surrounding his actions. Intent means a frame of mind of the defendant at the time he committed the acts. Very seldom does a person accused of a crime admit it at the time he intended to commit a crime. Therefore, you must look at all the surrounding circumstances including but not limited to what the defendant did, what he said, the nature of his conduct, the witnesses' description of the defendant's actions, the defendant's testimony concerning his actions to ascertain for yourselves what he intended.

After then reviewing the law relative to intoxication, the trial court instructed the jury at least three times that the prosecution was required to prove that Fratarcangelo had the "specific intent" to kill his wife, concluding this portion of the charge with the following admonishment:

> On the other hand, if you find that the Prosecution has not proven beyond a reasonable doubt and to your satisfaction that the defendant had formed the specific intent to kill his wife or that he did not cause her death by firing the weapon then you must find the defendant not guilty of the crime of Murder in the Second Degree....

Moving on to the crime of manslaughter, the trial judge charged that a person is guilty of Manslaughter in the First Degree "when with the intent to cause serious physical injury to another person he causes the death of such person." Once again, the judge told the jury that petitioner had to have the "specific intent" to cause serious personal injury before he could be convicted, and concluded:

> If you find that the Prosecution has not proven to your satisfaction and beyond a reasonable doubt that the defendant in-

tended to cause serious physical injury to his wife, Joyce Fratarcangelo, but that his actions caused her death then you may consider the crime of Manslaughter in the Second Degree.

Manslaughter in the Second Degree, the court charged, is based on proof of recklessness, "a killing not intentional, not done with the intent to cause death or with the intent to cause serious physical injury."

The judge then turned to the three counts of Attempted Murder in the Second Degree, the shootings directed at Pace, Ross and Southard. He instructed the jury:

> In order to find the defendant, Angelo Fratarcangelo, guilty of the crime of Attempted Murder in the Second Degree the jury must first find beyond a reasonable doubt that in each instance the defendant fired the weapon at the above-named individuals he intended to kill each of them. I have already charged you in defining Murder in the Second Degree the intent necessary to convict the defendant of Murder in the Second Degree. In other words, the specific intent to kill. In each of the counts of Attempted Murder in the Second Degree, the jury must also find the same intent to kill in each instance.

A similar "specific intent" charge was given in connection with the First Degree Assault count.

■ It is well-established that the single sentence upon which petitioner relies should not be considered in isolation but rather in the context of the charge as a whole. *Francis v. Franklin,* — U.S. —, 105 S.Ct. 1965, 1971, 85 L.Ed.2d 344 (1985). "Other instructions might explain the particular infirm language to the extent that a reasonable juror could not have considered the charge to have created an unconstitutional presumption." *Id.* (citing *Cupp v. Naughten,* 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973)). That is what has occurred in the instant case.

■ Here, unlike in *Francis v. Franklin, supra,* the "in other words" definition that followed the potentially offending language explained rather than contradicted the instruction that preceded it. *See id.* 105 S.Ct. at 1975 and 1975–76 n. 8. The very phrase "in other words" told the jurors that they were getting an explanation of what the preceding sentence meant. That explanation informed the jurors that intent may be inferred and need not be proved by the defendant's own statement, all of which is a correct statement of the law. *See Francis v. Franklin, supra,* 1975–76, where Justice Brennan said:

> Had the instruction "[a] person ... is presumed to intend the natural and probable consequences of his acts," ... been followed by the instruction *"this means that* a person will not be presumed to act with criminal intention but the jury may find criminal intention upon consideration of all circumstances connected with the act for which the accused is prosecuted," a somewhat stronger argument might be made that a reasonable juror could not have understood the challenged language as shifting the burden of persuasion to the defendant. (emphasis in original)

It is significant that the trial judge incorporated his charge on the intent required for conviction on the Second Degree Murder count into his charge on the intent required for Attempted Murder in the Second Degree. If any presumption were to be drawn in the Attempted Murder count from the "consequences" of petitioner's shooting at Pace, Ross and Southard, it would be a presumption that petitioner intended only to cause injury or fright, neither of which would satisfy the charged statutory requirement of a specific intent to kill. It is quite obvious that the trial judge did not want the jury to convict petitioner on any presumed intent but only on the specific intent required by the Murder and Attempted Murder statutes.

■ In short, viewing the charge as a whole, we fail to see how any reasonable juror could have construed the single challenged sentence as creating a presumption of intent that relieved the prosecution of its burden of proof on any count. Although

we do not rely upon the failure of petitioner's trial counsel to object to the charge, *see Rodriguez v. Scully*, 788 F.2d 62 (2d Cir.1986), it is not without significance that the person who was most nearly in the position of the jury and could weigh every nuance in the trial judge's words, was satisfied with the charge as given. The district judge did not err in rejecting petitioner's claim of *Sandstrom* error.

■ As stated above, there was no question that petitioner fired the shots that injured Ross and Pace and killed his wife. In apparent reference to this fact, the trial judge charged the jury, without objection, that "as a matter of law that the defendant engaged in conduct which tended to effectuate the commission of the crime of Murder in the Second Degree." Although this charge in effect removed from the jury's consideration the question whether petitioner fired his gun at his victims, we are satisfied that it was harmless error.

In his brief in this Court, Fratarcangelo concedes that intent was the sole issue. The portion of the charge above quoted involved an element of the crime that was completely separate from the intent component. Petitioner never claimed, and does not now claim, that his firing of the weapon did not have the effect of tending to kill or injure. The uncontroverted facts are that it did. At worst then this portion of the charge was harmless error. *See Sales v. Harris*, 675 F.2d 532, 540–41 (2d Cir.), *cert. denied*, 459 U.S. 876, 103 S.Ct. 170, 74 L.Ed.2d 140 (1982); *United States v. Ford*, 632 F.2d 1354, 1375 n. 22 (9th Cir.1980), *cert. denied*, 450 U.S. 934, 101 S.Ct. 1399, 67 L.Ed.2d 369 (1981).

The order of the district court is affirmed.