George ARCE, Petitioner,

v.

Harold J. SMITH, Respondent.

No. 83 CIV 0135 (KC).

United States District Court, S.D. New York.

March 17, 1989.

Colleen P. Cassidy, Legal Aid Soc., Federal Defender Services Unit, New York City, for petitioner.

Sandra Holt, Asst. Dist. Atty., New City, N.Y., for respondent.

## MEMORANDUM OPINION AND ORDER

CONBOY, District Judge:

The Court, having received the Report and Recommendation ("Report") of Magistrate Grubin, and the objections thereto of petitioner, and having conducted a *de novo* review of the record, accepts and adopts the Magistrate's Report.

The application for a writ is denied. The Clerk of the Court is directed to enter judgment dismissing the Petition with prejudice. A certificate of probable cause is granted.

SO ORDERED.

## REPORT AND RECOMMENDATION TO THE HONORABLE KENNETH CONBOY

SHARON E. GRUBIN, United States Magistrate:

Petitioner George Arce seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his convictions after a jury trial in the County Court of Rockland County of two counts of murder in the second degree (N.Y. Penal Law § 125.25) and one count of conspiracy in the first degree (N.Y. Penal Law § 105.15). He was sentenced to concurrent terms of incarceration of 25 years to life on the murder counts and 5 to 15 years on the conspiracy count. The Second Department Appellate Division affirmed the convictions without opinion over one justice's dissent. *People v. Arce*, 51 A.D.2d 1043, 381 N.Y.S.2d 328 (2d Dep't 1976). The New York Court of Appeals also affirmed the convictions in a unanimous opinion written by Judge Fuchsberg. *People v. Arce*, 42 N.Y.2d 179, 397 N.Y.S.2d 619, 366 N.E.2d 279 (1977). Peti-

tioner then filed a petition for a writ of habeas corpus in this court which was denied by Judge Sweet. *Arce v. Henderson*, 477 F.Supp. 71 (S.D.N.Y.1979), *aff'd* 636 F.2d 1200 (2d Cir.), *cert. denied*, 451 U.S. 914, 101 S.Ct. 1989, 68 L.Ed.2d 305 (1980). Thereafter, petitioner apparently filed at least four post-conviction motions pursuant to Article 440 of the New York Criminal Procedure Law. Petitioner's co-defendant at trial, Efrain Camara, also filed a habeas petition in this court which was denied by Judge Carter in 1985. *Camara v. Scully*, 624 F.Supp. 106 (S.D.N.Y.1985).[1]

## FACTUAL BACKGROUND

The facts adduced by the prosecution at the trial of petitioner and co-defendant Efrain Camara disclosed an uncomplicated scheme of murder for hire. According to Rafael Perez, who pled guilty to first degree manslaughter, he first met petitioner on the night of April 29, 1973 in the Bronx where Camara, Perez' neighbor, introduced them. Perez testified that at petitioner's request, he agreed to use his car to drive Camara to a diner in Rockland County the following morning where they would meet petitioner. Camara informed Perez that

petitioner was going to pay Camara $10,000 "to eliminate somebody," and Camara, in turn, would give Perez $4,000 for driving the getaway car. The following morning between 6:00 and 7:00 a.m., Perez and Camara arrived at the diner where they found petitioner, and shortly thereafter petitioner indicated the driver of a blue Ford Mustang as the intended victim. Perez and Camara followed the Mustang, leaving petitioner at the diner, and Perez rammed the Mustang in the rear with his automobile at Camara's direction. As the driver, John Morales, was inspecting the damage to his car, Camara shot him. Fleeing the scene, Manuel Carrero, who had been a passenger in Morales' car, was shot by Perez at Camara's direction with a gun that Camara had given to him just before the collision.

Camara took the witness stand on his own behalf and testified to a different version of events. He stated that he was in Perez' car that morning because Perez had offered to drive him to a factory in Rockland County where he hoped to find a job. He testified that Perez had been speeding and collided into the rear of Morales' car which had suddenly slowed in front of them. In the course of an argument that

1. Normally, a second petition for habeas corpus relief filed in this court with respect to the same conviction that was considered in an earlier petition would be subject to Rule 9(b) of the Rules Governing Section 2254 Cases, which provides that a successive petition may be dismissed if it presents claims which were already determined on the merits in the prior petition or the claims presented in the second petition could have been presented the first time around. Here, although most of the claims alleged herein would have been known to petitioner at the time he filed his first petition, they had not yet been exhausted in the state courts and, therefore, he would not have been able to present them in that petition. That petition was filed and dismissed by Judge Sweet prior to the Supreme Court's decision in *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), requiring that *all* grounds for relief in a petition must be exhausted in the state courts before any ground therein can be considered by the federal court. Thus, petitioner arguably should not be held to have been required to bring these new claims at that time. But, in addition, review of the voluminous and procedurally confusing record on petitioner's instant claims reveals that with respect to many of them, he has been subjected to an array of what I might call proce-

dural "Catch 22's." For example, petitioner raises herein a *"Sandstrom"* claim (*see* pp. 927–29, *infra*) which he had raised in his earlier petition. Judge Sweet ruled on that claim that he was not entitled to relief in this court because he had failed to exhaust state remedies on that claim. When petitioner thereafter raised his claim in the state court pursuant to N.Y. Crim.Proc.Law § 440.10, the state court dismissed it on the ground that petitioner had the opportunity to raise it in the habeas corpus petition dismissed by Judge Sweet. Another example is with respect to petitioner's claim of ineffective assistance of appellate counsel on his direct appeal. When he attempted to raise this claim in a § 440.10 motion, it was denied on the basis that it was procedurally barred because it was not raised on the direct appeal itself!

For these reasons, I believe this court should once and for all consider petitioner's claims on the merits without regard to Rule 9(b) and generally without regard to the doctrine of procedural forfeiture, and I have done so herein. As will be seen, I have recommended dismissal of claims on grounds of procedural forfeiture only where such forfeiture has been quite clear on petitioner's part and unquestionably must bar our review of the merits.

ensued between Perez and Morales after the collision, Morales had drawn a gun and when Perez struggled with him, the gun went off "two or three times." Perez then also shot the passenger of Morales' car. Camara denied that he ever met petitioner until after they were arrested, and his version of the story thus did not implicate petitioner at all. The unanimous opinion of the New York Court of Appeals affirming the convictions of petitioner and Camara noted some inherent difficulties with Camara's story and succinctly set forth a good summary of the remainder of the relevant evidence:

In short, according to Camara, he had possessed no gun, planned no murder, shot no one and the episode, so far as he was concerned, was a completely unexpected event for which he was blameless. His defense consisted solely of his testimony. He offered no explanation of why, if the shooting had indeed been precipitated by Morales' resort to a gun, Perez, who had already involved Arce and obtained the District Attorney's consent to his plea to a lesser offense, should have found it necessary not only to implicate Camara but to relate a false version contrary to his own self-interest.

Be that as it may, Camara's main difficulty was that, aside from any inherent improbabilities in his story, there was overwhelming proof to contradict it. For one thing, Henry Goldman, a motorist in the immediate vicinity of the events, testified that he observed that Morales was not engaged in a fight but merely inspecting the rear of his car when a shot rang out and Morales' body convulsed "as if hit by gunfire." Another and equally disinterested motorist, Rocco Marino, provided confirmatory testimony. Two witnesses other than Perez testified that they too had seen Camara with Arce the evening before the homicides. One of them, Feliz Burgos, a friend of Arce's for about 10 years, related that he had seen Arce, Perez and Camara together the night before, as had his fiancee, Minerva Cuadros, an employee at the fast food place where the three men went to purchase chicken. Burgos

had driven to the fast food place to take her home from work that night. The car in which Camara was seen by them, a Chevelle Malibu, was later identified as a vehicle rented by Arce.

42 N.Y.2d at 184–85, 397 N.Y.S.2d at 622–23, 366 N.E.2d at 282.

In addition, Feliz Burgos testified that petitioner had told him several months before the shootings that he was "going to get" Morales. The prosecution also presented proof from a firearms company and from an acquaintance of petitioner who lived in Maryland that the gun with which Morales had been shot had been purchased by petitioner and delivered to him through the friend's address in Maryland.

### PETITIONER'S CLAIMS

Petitioner originally submitted this case *pro se*, presenting nine grounds for relief: (1) ineffective assistance of counsel at trial; (2) ineffective assistance of counsel on appeal; (3) the prosecution instructed its key witness, Perez, to solicit information and to fabricate his testimony; (4) the prosecution procured fabricated testimony of Minerva Cuadro and allowed it to stand uncorrected even though she swore in an affidavit after the trial that her testimony had been false; (5) the prosecution shifted its burden of proof to petitioner during cross-examination of petitioner's co-defendant Camara; (6) denial of the right to testify before the grand jury; (7) denial of the right to a speedy trial; (8) the trial court's instructions shifted the prosecution's burden of proof to petitioner on the element of intent; (9) denial of due process because petitioner never reviewed his presentence report which contained fabricated information.

After this petition was filed, the Legal Aid Society was appointed to represent petitioner herein, and in a memorandum of law submitted in support of the petition, counsel pursued only the first, second and fourth claims listed above. Thereafter, petitioner *pro se* sought a stay which was granted by Judge Weinfeld to pursue a post-conviction proceeding in the state courts in order to exhaust certain claims. Thereafter, the Legal Aid Society sub-

mitted an "Amended Petition" which is in reality a supplemental pleading raising additional allegations (which I have, for the sake of clarity, continued to number consecutively): (10) ineffective assistance of counsel at sentencing, and (11) sentencing by the trial court on the basis of a presentence report containing erroneous information. In addition, further memoranda of law submitted by petitioner *pro se* allege (12) insufficiency of the evidence of the conspiracy, (13) denial of a fair trial stemming from joinder of his case with that of co-defendant Camara, and (14) again, the court's instructions on the element of intent shifted the prosecution's burden of proof.

## DISCUSSION

■ In order to exhaust his state remedies with respect to claims (1) through (8) listed above, petitioner brought a motion on those grounds to vacate the judgment of conviction pursuant to N.Y.Crim.Proc.Law § 440.10 which was denied by the New York Supreme Court by decision and order of March 15, 1982. The state court ruled that all but the eighth claim could have been raised by petitioner on his direct appeal and therefore could not be relitigated collaterally. The court held that petitioner had already had the opportunity to litigate Claim (8), concerning the trial court's intent instruction, in the habeas corpus petition filed in this court before Judge Sweet (*see* footnote 1, *supra*). *See* Exhibit N to petitioner's first memorandum of law (docket entry # 8). As a consequence, before this court can consider issues (1) through (7), petitioner must demonstrate both that cause existed for his state court procedural defaults and that prejudice resulted therefrom. *See Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 2648, 91 L.Ed.2d 397 (1986); *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Cantone v. Superintendent, New York Correctional Facility at Green Haven*, 759 F.2d 207, 217–18 (2d Cir.), *cert. denied*, 474 U.S. 835, 106 S.Ct. 109, 88 L.Ed.2d 89 (1985). Petitioner offers no explanation of cause. However, construing his various pleadings in the light most favorable to

him, he does allege, as Claim (2) for relief, that appellate counsel rendered ineffective assistance in various respects. If he were correct that appellate counsel's performance was violative of the Sixth Amendment, that ineffective assistance could arguably have been a "cause" for his procedural defaults on appeal. *See Murray v. Carrier*, 106 S.Ct. at 2648; *Cantone v. Superintendent, etc.*, 759 F.2d at 218. Therefore, given this procedural posture, we will first consider petitioner's claims concerning appellate counsel. He alleges specifically in support of that claim that appellate counsel (a) did not raise on appeal the issue of ineffective assistance of trial counsel; (b) did not raise the issue of prosecutorial misconduct as requested by petitioner; (c) refused petitioner's request that the appeal be argued orally; and (d) failed to challenge the jury instruction on intent.

With respect to (a), in order to determine whether appellate counsel was constitutionally deficient in not arguing that trial counsel was constitutionally deficient, we need to review trial counsel's performance itself. The standards for evaluating a claim of ineffective assistance have been delineated by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The Court explained there that the purpose of the Sixth Amendment's requirement of effective assistance of counsel is to ensure a fair trial, so that "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686, 104 S.Ct. at 2064.

■ The Court stated that on a claim of ineffective assistance a petitioner must demonstrate two elements. First, he must show that counsel's performance was deficient to the extent that the errors made were not within the realm of reasonableness under the professional norms prevailing at the time of trial. *Id.* at 687–88, 104 S.Ct. at 2064–65. There is a "strong presumption that counsel's conduct falls within the wide range of reasonable profession-

al assistance," and that counsel has "made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690, 104 S.Ct. at 2066. Petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (quoting *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955)).

The second element that must be shown on an ineffective assistance claim is prejudice. If petitioner can establish that his counsel's performance fell below the prevailing professional norms, he must also show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* 466 U.S. at 694, 104 S.Ct. at 2068. The Court defined a reasonable probability as "a probability sufficient to undermine confidence in the outcome" of the proceeding. *Id.* It is not sufficient to show merely that counsel's errors had "some conceivable effect" on the result for "not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." *Id.* at 693, 104 S.Ct. at 2067. It is petitioner's burden to show that absent counsel's errors, "the decision reached would reasonably likely have been different," considering the totality of all the evidence. *Id.* at 696, 104 S.Ct. at 2069. The Court noted that, although analysis of an ineffective assistance claim involves the two elements of counsel's error and prejudice, it is not necessary for a reviewing court to address both elements if the petitioner makes an insufficient showing on either one. *Id.* at 697, 104 S.Ct. at 2069.

■ Petitioner's first allegation of trial counsel's deficient performance is that counsel failed to pursue an alibi defense. Petitioner has submitted an affidavit dated December 17, 1981 of an Anna Hernandez. Exhibit B to docket entry # 8. Hernandez states therein that she knew petitioner for over 20 years and that she arranged for his representation by trial counsel John Cimarosa. According to Hernandez, she gave Cimarosa $4,000 "to conduct an investigation and to locate witnesses," but he only located one witness. She says Cimarosa told her he was going to hire a private investigator, but he never gave her an investigator's report. She also says she was present at meetings between Cimarosa and petitioner and that at one of these meetings Cimarosa stated that petitioner's co-defendant Camara was the only witness the judge would allow to testify. She states that at another meeting petitioner told Cimarosa that he had been in Washington, D.C. on the day of the killings and that there were "possibly some people" who could verify this story. She claims that Cimarosa responded that the investigator would check into it, "but he [presumably, the investigator] never did." No evidentiary foundation is offered to substantiate Hernandez's capacity to testify about the nature of the investigation performed by anyone. Submitted as Exhibit A to petitioner's first memorandum of law (docket entry # 8) is a photocopy of an alleged receipt from a Howard Johnson's Motor Lodge in Silver Hill, Maryland. Petitioner does not explain when or how this document was obtained. It indicates payment on April 30, 1973, the day of the murders, for a room and long distance phone calls. The payment was by credit card in the name of "G. Albert Arce". The signature is not legible. There has been no affidavit or other document provided to explain the circumstances surrounding this document. Moreover, although there is no explanatory information supplied, my own review of it, albeit non-expert, leads me to believe that it purports to show that it was on April 30, 1973 that petitioner both arrived at and left this motor lodge. There seems to be no time of day indicated for arrival or departure. As the meeting with petitioner at the diner in New York just prior to the murders was supposed to have taken place at approximately 7:00 a.m., this receipt appearing to show petitioner's arrival at the motor lodge in Silver Hill, Maryland sometime on that date is not inconsistent with his having earlier that day been at the diner. *See, e.g., Cepulonis v. Ponte,* 699 F.2d 573 (1st Cir.1983), where a defendant claimed he presented counsel with an alibi

claim but counsel failed to investigate. The court there held:

> [J]ust as counsel is not required to waste the court's time pursuing frivolous legal motions ... so too counsel need not chase wild factual geese when it appears, in light of informed professional judgment, that a defense is implausible or insubstantial as a matter of law, or, as here, as a matter of fact and of the realities of proof, procedure, and trial tactics.

699 F.2d at 575. In short, the evidence offered by petitioner does not show that there would have been any proof of an alibi that could have been established at trial. *See People v. Claytor*, 137 A.D.2d 760, 524 N.Y.S.2d 835, 836 (2d Dep't 1988) *(mem.)*; *cf. Farinaro v. Kirk*, 675 F.Supp. 75, 82 (E.D.N.Y.1987); *People v. Ford*, 46 N.Y.2d 1021, 416 N.Y.S.2d 536, 389 N.E.2d 1058 (1979) *(mem.)*. But moreover, petitioner offers nothing to support his claim that he was in Washington, D.C. on that day beyond the purported receipt from Howard Johnson's. Although the Hernandez affidavit states that she heard petitioner tell his counsel "that there were possibly some people who could verify" that he was in Washington, D.C. that day, still, fifteen years later, petitioner has not managed to tell us who these people might be or offer any other evidence to indicate his contention might be other than frivolous. The circumstances compel the conclusion that trial counsel could have very well tactically chosen not to pursue a less than solid alibi which would have required petitioner's testimony in order to be persuasive and which may have confused the jury. Co-defendant Camara's testimony of what had happened before and at the scene of the homicides contained nothing that implicated petitioner. Given this, petitioner's counsel hammered at Perez's inculpating testimony and pointed out the circumstances tending to support Camara's version of the events. Moreover, there is evidence that the wife of the victim Morales was having an affair with petitioner and that she was the beneficiary of a $300,000 life insurance policy.

In addition, there is evidence that Morales was cooperating with police in a drug investigation and was going to implicate petitioner. Counsel can hardly be faulted for not pursuing a strategy which would have laid his client bare to cross-examination about possible motives as well as other incriminating information. Petitioner has certainly not "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland v. Washington*, 466 U.S. at 690, 104 S.Ct. at 2066. *Cf. United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir.1987), *cert. denied sub nom., Annabi v. United States*, — U.S. —, 108 S.Ct. 1018, 98 L.Ed.2d 983 (1988). Similarly, with respect to the other hearsay contention in the Hernandez affidavit, that counsel told petitioner that the trial judge would not allow petitioner to testify, it is indeed the rare case in which a defendant does testify in his own behalf, and given the damaging implications of a cross-examination of petitioner, we cannot second-guess trial counsel's decision to not put petitioner on the stand. *See People v. Coleman*, 142 A.D.2d 586, 530 N.Y.S.2d 242, 244 (2d Dep't 1988) *(mem.)*. Petitioner does not tell us what it is he might have told the jury. Thus, even if counsel falsely told petitioner that the trial court would not allow him to testify, without his showing how he was prejudiced—that given the totality of the evidence, the jury's decision "would reasonably likely have been different," *Strickland v. Washington*, 466 U.S. at 696, 104 S.Ct. at 2069—which he has not attempted to do, the falsehood is irrelevant.

■ As another instance of trial counsel's alleged ineffective assistance petitioner cites counsel's failure to object to comments made by the prosecutor during summation. Petitioner points to a multitude of allegedly offending remarks. While a review of the summation does show some instances in which the Assistant District Attorney did make some improper statements, petitioner's contentions with respect to the majority of the alleged improprieties are meritless.[2] Moreover, even the rather

---

2. For example, petitioner complains of the following:

improper remarks did not rise to the level of reversible error as a matter of state law (*see People v. Arce*, 42 N.Y.2d at 190–91, 397 N.Y.S.2d at 626, 366 N.E.2d at 287), much less to the level of constitutional impropriety of depriving petitioner of a fair trial. But we need not review each remark or the summation as a whole herein, because that has already been done by two judges of this court. Petitioner raised the same claim in his prior petition on which Judge Sweet held as follows:

> Arce's fifth asserted ground relates to the prosecutor's conduct at trial. It is, however, well established that federal habeas corpus relief is not available on the basis of improper prosecutorial statements at trial "unless the errors, either singly or together, were so fundamentally unfair as to deny the defendant a fair trial." *Orr v. Schaeffer*, 460 F.Supp. 964, 966 (S.D.N.Y.1978) (footnote omitted); *see also Donnelly v. DeChristoforo*, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed. 2d 431 (1974); *Malley v. Manson*, 547 F.2d 25 (2d Cir.1976), *cert. denied*, 430 U.S. 918, 97 S.Ct. 1335, 51 L.Ed.2d 598 (1977); *United States ex rel. Colon v. Follette*, 366 F.2d 775 (2d Cir.1966). The prosecutor's summation at Arce's trial was not so prejudicial. *See, Malley v. Manson, supra*, at 28.

477 F.Supp. at 74. Judge Carter was presented with the same claim by Camara on his petition for habeas relief and likewise denied it. 624 F.Supp. at 110. Thus, inasmuch as the summation comments did not rise to the level of constitutional error or reversible error under state law, petitioner was not prejudiced by counsel's failure to object to them and counsel cannot be found to have been ineffective. *See Strickland v. Washington*, 466 U.S. at 694, 104 S.Ct. at 2068; *People v. DeGraw*, 140 A.D.2d 984, 529 N.Y.S.2d 656, 657 (4th Dep't 1988) (*mem.*); *People v. Bramble*, 103 A.D.2d 1019, 478 N.Y.S.2d 399, 400 (2d Dep't 1984) (*mem.*).

■ Petitioner next faults trial counsel for not having objected to the following instruction of the trial court on intent:

> The law states that a person acts intentionally with respect to a result or to conduct described by a statute defining an offense when his conscious objective is to cause such result or to engage in such conduct. Also, *a person is presumed to intend the natural and probable consequences of his act or acts.*

Transcript of Charge at 104 (emphasis added). The underscored language is similar to that found unconstitutional by the Supreme Court five years later in *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). The Court in *Sandstrom* held that a jury instruction that "the law presumes a person intends the ordinary consequences of his voluntary acts" deprived a defendant of his due process right that the prosecution prove each element of a crime beyond a reasonable doubt because the jury may have interpreted the charged presumption as conclusive or as shifting the burden of persuasion to the defendant to prove lack of intent. One issue relevant herein is whether petitioner's counsel was incompetent in not objecting five years before the Supreme Court's pronouncement with respect to a charge that was routinely used in criminal cases in New York State. *See People v. Gray*, 71 A.D.2d 295, 423 N.Y.S.2d 66, 67 (4th Dep't 1979) ("The court's further charge on intent to the effect that 'a person is presumed to intend the logical and natural consequences of his acts' was an instruction the propriety of which has long been established in this State (see *People v. Lieberman*, 3 N.Y.2d 649, 652, 171 N.Y.S.2d 73, [76, 148 N.E.2d 293 (1958), and cases cited therein.])"). Under the Supreme Court's standard for effective assistance in *Strickland v. Washington*, counsel's performance must be deficient to the extent that his errors were not within the realm of reasonableness under the *professional norms prevailing at*

---

It's interesting. He [Perez] called him Mr. Arce. He called Camara, Efrain. Do you know why he called Arce, Mr. Arce? He called him that because he respected him, because Mr. Arce was the money man.

Transcript of Summation at 29. Yet, this comment was nothing more than a request to the jury to draw a legitimate inference from the evidence.

*the time of trial.* 466 U.S. at 688–89, 104 S.Ct. at 2064–65. It might be noted that counsel for co-defendant Camara did not object to the language either. But we need not discuss this issue because petitioner's claim of ineffective assistance in this regard fails in any event under the second prong of *Strickland v. Washington* because the assumedly improper language and failure to object to it did not prejudice petitioner given its context within the court's charge as a whole.

The Supreme Court explained the following in *Francis v. Franklin*, 471 U.S. 307, 315, 105 S.Ct. 1965, 1971, 85 L.Ed.2d 344 (1985):

> Analysis must focus initially on the specific language challenged, but the inquiry does not end there. If a specific portion of the jury charge, considered in isolation, could reasonably have been understood as creating a presumption that relieves the State of its burden of persuasion on an element of an offense, the potentially offending words must be considered in the context of the charge as a whole. Other instructions might explain the particular infirm language to the extent that a reasonable juror could not have considered the charge to have created an unconstitutional presumption. *Cupp v. Naughten*, 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973). This analysis "requires careful attention to the words actually spoken to the jury ..., for whether a defendant has been accorded his constitutional rights depends upon the way in which a reasonable juror could have interpreted the instruction." *Sandstrom*, 442 U.S. at 514, 99 S.Ct. at 2454.

*Accord California v. Brown*, 479 U.S. 538, 107 S.Ct. 837, 839, 93 L.Ed.2d 934 (1987). Unlike *Sandstrom*, where "the trial judge had given this instruction to the jury without explanation or qualification," *Mancuso v. Harris*, 677 F.2d 206, 210 (2d Cir.), *cert. denied*, 459 U.S. 1019, 103 S.Ct. 382, 74 L.Ed.2d 514 (1982), the record here discloses that the jurors could not have been misled into presuming the existence of the element of intent or believing that the burden of proving the element of intent was not on the prosecution. The challenged language was only one sentence of the court's charge on intent which comprises three pages of the transcript. Just prior to commencing his definition of intent, the judge stated, "Now, as I said before, the burden is always upon the prosecution to prove beyond a reasonable doubt every essential element of the crime charged." Transcript of Charge at 101. Then, specifically, he explained that "the existence in the defendant's mind of that specific intent at the time he commits the act, must be proven by the People beyond a reasonable doubt." *Id.* at 102. Following that language the court instructed specifically further that "the People must prove beyond a reasonable doubt" that the defendant intended to cause the deaths of Morales and Carrero. Moreover, prior to the challenged language, the court listed factors the jurors could consider in determining the existence of intent, and, immediately following the offending sentence, the judge stated in the very next phrase:

> Now, as I said, specific intent is an essential element of the crimes charged and you must consider and determine whether the criminal intent to commit those crimes existed on the part of the defendant. It is for you, the jury, to determine whether the People have proven beyond a reasonable doubt that the defendant had the specific intent at the time of the commission of the crime.

*Id.* at 104. *See, e.g., Collins v. Scully*, 582 F.Supp. 1100, 1102 (S.D.N.Y.1984), *aff'd* 755 F.2d 16 (2d Cir.1985) (instruction that burden of proving intent beyond a reasonable doubt almost immediately preceding challenged language had curative effect). Under these circumstances, it cannot be said that the challenged language "so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten*, 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973). *See also Fratarcangelo v. Smith*, 792 F.2d 40, 42–43 (2d Cir.1986); *Rivera v. Coombe*, 683 F.2d 697, 700–01 (2d Cir.1982), *cert. denied*, 459 U.S. 1162, 103 S.Ct. 805, 74 L.Ed.2d 1007 (1983); *Nelson v. Scully*, 672 F.2d 266, 272 (2d

Cir.), *cert. denied,* 456 U.S. 1008, 102 S.Ct. 2301, 73 L.Ed.2d 1304 (1982); *Washington v. Scully,* 640 F.Supp. 1226, 1231 (S.D.N.Y. 1986), *aff'd* 812 F.2d 713 (2d Cir.), *cert. denied,* 482 U.S. 907, 107 S.Ct. 2485, 96 L.Ed.2d 378 (1987); *Shaird v. Scully,* 610 F.Supp. 442, 449 (S.D.N.Y.1985).

Lastly, petitioner contends with respect to trial counsel's performance that it was deficient during the sentencing proceeding. The contention appears to consist of two aspects: first, that counsel's remarks to the court during sentencing were less than desirable and second, apparently, that counsel did not discuss the presentence report with petitioner and did not object to an allegedly incorrect statement by the court.

With respect to the first aspect of alleged ineffectiveness, the petition, the amended petition and the memoranda in support thereof submitted by petitioner's counsel herein, the Legal Aid Society, are disingenuous. For example, it is stated that "[d]efense counsel took exception to the prosecutor's sentence recommendation but otherwise thanked him for his 'unfailing courtesy and fairness....'" However, a reading of the transcript reveals that what counsel said, after the Assistant District Attorney had asked for the severest possible sentence, was as follows:

> If the Court please I was going to open by thanking Mr. Frank [the Assistant District Attorney] for his unfailing courtesy and fairness throughout this long and tedious trial. I will not make that statement at this time. I am sorry he saw fit to change.

Transcript of Sentencing at 6. Similarly, petitioner states that counsel remarked, "this is the first time I have ever been at a sentence for murder, which would be the first degree...." But, placed in context, counsel's remarks appear as follows:

> I have been in this position on several occasions, although I must say this is the first time I have ever been at a sentence for murder, which would be the first

degree, and I have never heard a District Attorney make a recommendation such as was made by Mr. Frank.

*Id.* In any event, the transcript does not reveal that counsel's performance fell below the "range of reasonable professional assistance," *Strickland v. Washington,* 466 U.S. at 689, 104 S.Ct. at 2065, and petitioner fails to even allege what more trial counsel could have said under the circumstances to influence the court's choice of sentence.

The second aspect of this contention concerns the presentence report. Petitioner complains that it contained incorrect information on which the court relied and that counsel neither discussed the report with him nor objected to the court's alleged reliance on the incorrect information. This claim arises from the fact that the report, prepared by a Rockland County Probation Officer, related that the officer had interviewed an investigator on the District Attorney's staff who had informed the officer that the prosecution's theory of the motive in the case was, in part, that the victim, Morales, who was petitioner's partner in an importing and trucking business, was "cooperating with agents in a drug investigation and was to disclose information deleterious to George Arce, who, it is rumored, engaged in drug trafficking." *See* Exhibit C to Amended Petition at 3. In the course of imposing sentence upon petitioner, the judge stated that "Morales, according to the testimony at the trial was killed because he allegedly was going to rat to the police." Transcript of Sentencing at 10. Petitioner has latched onto this sentence as the primary basis for his amended petition, complaining that there was no such testimony at the trial and that the court could have gotten this information only from the presentence report. Moreover, according to petitioner, the information in the presentence report was false because he has never been engaged in drug trafficking.[3]

---

**3.** Petitioner appears to claim in passing that certain other information in the presentence report was also incorrect. These alleged errors are clearly immaterial, relating to such things as what elementary school he attended and when he was married, and need not be discussed. Petitioner, moreover, does not even state in what ways he contends any of this other information is false.

Petitioner's contention this time with respect to the judge's reference to the trial testimony is not simply disingenuous; it is plainly wrong. Perez testified on page 961 of the transcript that Camara told him that Morales was killed "because he was ratting to the police." Thus, the primary basis for the amended petition is in error. Petitioner states in both the amended petition and his memorandum in support thereof:

There was no proof at trial that Morales was informing on Arce or anyone else. This allegation appeared only [in] the presentence report.

Amended Petition at 2; Memorandum of Law in Support of Amended Petition at 3. The claim is thus stated in the memorandum:

Among the false information was the contention that the murder victim had been cooperating with the authorities in a drug investigation of petitioner. This allegation was relied on by the judge at sentencing. He stated that "Morales, according to the testimony at trial, was killed because he allegedly was going to rat to the police." There, was, however, no proof of this at trial. Nor was there proof that petitioner had ever participated in a drug sale. In fact, the information came from the report.

The circumstances show that the information regarding an alleged motive and petitioner's alleged drug involvement were never presented at trial and subjected to cross-examination, and that petitioner never saw the pre-sentence report and was therefore precluded from rebutting it. This information was never tested in any way for truth or falsity. Indeed, petitioner was not even aware of the existence of this information. Petitioner contends that he has never been involved in drug trafficking and it is undisputed that he had no prior arrests. The judge's reliance on this false information renders the sentencing violative of due process.

Memorandum of Law in Support of Amended Petition at 8–9. Given the fact that Perez indeed testified that Camara told him that petitioner wanted Morales killed "because he was ratting to the police," peti-

tioner's counsel, needless to say, can hardly be deemed to have been ineffective for failing to point out to the court that there had been no such testimony. Had petitioner's current attorneys reviewed the transcript, they should have seen that such testimony did exist. Moreover, they had two chances to learn that the claim they were making was wrong. The very same language of the court—that Morales was killed because he was "ratting to the police"—also appears at page 105 of the judge's charge to the jury which was, of course, given long before the presentence report was ever written.

■ Trial counsel's alleged failure to discuss the presentence report with petitioner does not amount to a Sixth Amendment violation. Petitioner claims that if he had seen the report, he could have challenged its incorrect assertions at the sentencing. But, all of petitioner's claims concerning the presentence report itself and counsel's alleged derelictions with respect thereto must be rejected because a review of the report and of the sentencing proceeding shows that, even assuming the information of which petitioner complains to have been wrong, petitioner has not shown that he was prejudiced thereby. The only other substantive information in the report which petitioner claims was false is that petitioner was "rumored" to have been engaged in drug trafficking. But petitioner, once again, has seen fit to take matters of record out of context. Although the presentence report did state that the District Attorney's investigator stated that petitioner was "rumored" to have been engaged in drug trafficking, the report also stated as follows:

George Arce has not had a prior criminal record and so it is difficult to assess his criminal tendencies in the light of this fact. Strangely, he seems to attract a lot of rumors concerning his record; rumors of his engaging in drug trafficking. There is no official indication of this fact through prior arrests however. *Therefore, those rumors of his involvement must be treated as just that,* although such information was part of an investi-

gation of George Arce by the District Attorney's investigators.

*The Defendant, in interview, hotly denied any connection with the traffic of drugs* and claimed his partnership with the deceased was purely trucking and importing.

Exhibit C to Amended Petition at 4 (emphasis added).

Moreover, petitioner has failed utterly to show that the sentencing court relied on the allegedly erroneous information or to offer any evidence whatever of his business arrangements with Morales in order to support his claim that the information was erroneous. There is nothing in the minutes of the sentencing proceeding to indicate that the statement in the report that petitioner was "rumored" to have been engaged in drug trafficking influenced the term to which the court sentenced petitioner. To the contrary, the judge gave specifically his reasons for the sentence he imposed and made no mention of that information at all (*see* Transcript of Sentencing at 12–13). In *United States v. Rachels*, 820 F.2d 325 (9th Cir.1987) (per curiam), the question was whether a defendant's due process rights had been violated where the sentencing court had in fact relied quite heavily on allegations of the prosecution that the defendant claimed were false. In rejecting the defendant's claim, the court explained as follows:

A defendant challenging information used in his sentencing must show 1) that the information is false or unreliable and 2) that the sentencing judge relied, at least in part, on this information. Where the court does not rely on the challenged information, the sentence will be affirmed regardless of the accuracy of the challenged information. .

Here, the judge did consider that [the defendant] had falsified records in determining the severity of the sentence imposed. However, [the defendant] has not demonstrated either the falsity or the unreliability of the government's oral representations about the log book. He has simply alleged that the prosecutor's statements are incorrect. [The defendant] has offered no evidence that the

affidavits submitted by the government attesting to the fraudulent nature of [the defendant's] dispensing of drugs were either false or unreliable. Accordingly, we do not find a sufficient basis to remand for sentencing.

820 F.2d at 327–28 (citations omitted). In sum, whatever alleged deficiencies petitioner's counsel is claimed to have inflicted upon him in connection with the presentence report, as he was not prejudiced thereby, he was not denied his Sixth Amendment right to the effective assistance of counsel.

Before leaving this claim, a few more remarks seem in order. Precisely what petitioner is claiming with respect to the presentence report has been difficult to decipher, in part because some of petitioner's contentions are contradictory. This claim is one of those that petitioner went back to the state courts to exhaust after filing the instant petition in this court. The amended petition states: "This claim is predicated upon petitioner's having obtained for the first time his presentence report (which his lawyer never discussed with him) and having discovered that it contained false information." Amended Petition at 1. However, petitioner's original petition alleged, as its ninth ground for relief: "Pre–Sentence Report was based on Fabricated Information." Petitioner does not explain how he knew this back in 1983 whereas he now claims to have discovered it in 1986.

The § 440.10 motion that petitioner brought in this regard in 1986 was denied by the state court on procedural grounds on the basis of petitioner's having failed to raise the issue on his direct appeal. In support of his motion to the state court, petitioner contended:

[T]he court and prosecution were in possession of defendant's presentence report, without ever giv[ing] defendant or his counsel the opportunity to review said report, and by the denial to review same, this defendant was denied his right to file a defendant's presentence memorandum pursuant to CPL 390.40, and refute several of the allegations contained

in the presentence report, and urged that, in fact, the report contained misleading information, and information that would have influenced this court; however, defendant and his counsel were never given the opportunity to refute 'any' of the misleading information within the presentence report.

Exhibit B to Amended Petition (Arce affidavit at 3). Indeed, in denying the motion, the § 440.10 court summarized the issues by stating, "All of the defendant's contentions stem from his allegation that he or his counsel did not see the presentence report at the time of sentencing." Exhibit D to Amended Petition at 1. Thus, to the § 440.10 court petitioner claimed that neither he nor his counsel were allowed an opportunity to review the report. Herein, however, petitioner claims that counsel rendered ineffective assistance because he did not discuss the report with him. At the same time, however, in arguing that the § 440.10 court was incorrect in concluding that the claim was procedurally barred, petitioner tells us the following:

This conclusion is based on the false assumption that petitioner could have read the presentence report and corrected the errors. However, under the law in effect at the time of petitioner's sentencing (June 18, 1974), neither petitioner nor his attorney had a right to read the report. C.P.L. § 390.50(2), which granted disclosure to a "defendant's attorney, or the defendant himself, if he has no attorney" did not take effect until September 1, 1975.

Petitioner's Memorandum in Support of the Amended Petition at 9–10. Furthermore, after respondent answered the above argument by challenging trial counsel's alleged non-access to the report, petitioner has now replied that respondent has "misconstrued" petitioner's argument: "Petitioner does not claim that his trial counsel never saw the report, only that petitioner never saw it and his counsel never discussed it with him." Petitioner's Reply Memorandum in Support of the Amended Petition at 3 n. *.

The point is that petitioner apparently has seen fit to argue herein whatever is convenient on any particular page of his submissions without regard to accuracy or consistency with respect to the facts or the law. Petitioner's credibility appears negligible.

■ Considering all of petitioner's claims of trial counsel's inadequacies, separately and in combination, in conjunction with an examination of trial counsel's overall presentation of the case as shown by a review of the transcript, I find that petitioner was not denied his Sixth Amendment right to effective assistance of trial counsel. As a result, appellate counsel cannot be deemed ineffective for having failed to argue on appeal the inadequacy of trial counsel's performance. *See, e.g., Turner v. Sullivan,* 661 F.Supp. 535, 539 (E.D.N.Y.1987), *aff'd* 842 F.2d 1288 (2d Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 2913, 101 L.Ed.2d 944 (1988).

In addition to his appellate attorney's failure to argue on appeal that his trial attorney rendered ineffective assistance, petitioner also faults his appellate counsel for several additional reasons. He contends that counsel, who adopted by reference the argument on appeal of co-defendant Camara with respect to the issue of prosecutorial misconduct, should have instead made his own argument on the point. Petitioner also contends that counsel on appeal should have challenged the trial court's instruction on intent. We have already discussed above the claims of prosecutorial misconduct and the challenged intent charge in determining that trial counsel's assistance was not ineffective because those claims must fail on the merits. It follows, therefore, that petitioner was not prejudiced by appellate counsel's alleged derelictions with respect thereto within the meaning of the Sixth Amendment. Besides, as the Supreme Court stated in *Jones v. Barnes,* 463 U.S. 745, 754, 103 S.Ct. 3308, 3314, 77 L.Ed.2d 987 (1983):

For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the very goal of vigorous and effective advocacy that underlies

*Anders* [*v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967)]. Nothing in the Constitution or our interpretation of that document requires such a standard.

*See also Cantone v. Superintendent, New York Correctional Facility at Green Haven*, 759 F.2d 207, 218–19 (2d Cir.), *cert. denied*, 474 U.S. 835, 106 S.Ct. 109, 88 L.Ed.2d 89 (1985). Petitioner also cites as ineffective assistance the fact that appellate counsel waived oral argument and submitted the appeal on the briefs. Petitioner certainly has not demonstrated that if the appeal had been argued orally, "the decision reached would reasonably likely have been different...." *Strickland v. Washington*, 466 U.S. at 696, 104 S.Ct. at 2069. Indeed, there is no reason to even suspect it. *See also United States v. Helgesen*, 669 F.2d 69, 72 (2d Cir.), *cert. denied*, 456 U.S. 929, 102 S.Ct. 1978, 72 L.Ed.2d 445 (1982) (trial counsel's failure to make opening or closing statement not basis for ineffective assistance claim).

Thus, having reviewed the allegations of ineffective assistance petitioner raises with respect to his appellate counsel and finding them without merit, we must find that petitioner has not established cause to excuse his procedural defaults with respect to Claims (1) through (7) of his petition (*see* p. 924, *supra.*) Therefore, none of these seven claims can furnish a basis for habeas corpus relief in this court.[4]

■ In Claim (8) petitioner challenges the intent instruction itself which we have, of course, already discussed in conjunction with his ineffective assistance claims. Claim (9), that petitioner was denied due process because he never reviewed his presentence report which allegedly contained false information, has also already been

discussed above and shown to be without merit.[5] Claim (10) is the one wherein petitioner alleges ineffective assistance of trial counsel specifically at sentencing. The related Claim (11), that petitioner was sentenced on the basis of an erroneous presentence report, has, of course, also been considered above.

■ Petitioner raises *pro se* as Claim (12) that there was insufficient evidence to support the jury's finding that he entered into an agreement with the intent to kill Morales. A claim challenging the sufficiency of the evidence carries a "very heavy burden." *United States v. Soto*, 716 F.2d 989 (2d Cir.1983); *see also United States v. Lanza*, 790 F.2d 1015 (2d Cir.), *cert. denied*, 479 U.S. 861, 107 S.Ct. 211, 93 L.Ed.2d 141 (1986). The standard for measuring the sufficiency of the evidence in a federal habeas corpus proceeding is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original). The elements of a crime, including intent, may be inferred from circumstantial evidence. *See, e.g., McShall v. Henderson*, 526 F.Supp. 158, 161 (S.D.N.Y.1981); *People v. Benzinger*, 36 N.Y.2d 29, 34, 364 N.Y.S.2d 855, 858, 324 N.E.2d 334, 337 (1974); *People v. Horton*, 18 N.Y.2d 355, 359, 275 N.Y.S.2d 377, 379, 221 N.E.2d 909, 912 (1966), *remittitur*, 19 N.Y.2d 600, 278 N.Y.S.2d 388, 224 N.E.2d 884 (1967), *cert. denied*, 387 U.S. 934, 87 S.Ct. 2059, 18 L.Ed.2d 997 (1967). Thus, "[i]f any competent evidence went to the fact-finders from which they could infer guilt beyond a rea-

---

4. It should be noted, however, that although these claims are thus barred from our consideration, in arriving at that conclusion, we have herein nevertheless determined on the merits Claims (1) and (2)—assistance of trial counsel and assistance of appellate counsel. Moreover, Claim (3), alleging that the prosecution instructed Perez to fabricate testimony, was already denied on the merits by Judge Sweet after full consideration. *Arce v. Henderson*, 477 F.Supp. at 74.

5. It might additionally be noted here that the due process clause does not require any disclosure of a presentence report. *See United States v. Coletta*, 682 F.2d 820, 827 (9th Cir.1982), *cert. denied*, 459 U.S. 1202, 103 S.Ct. 1187, 75 L.Ed.2d 433 (1983) (citing *Williams v. New York*, 337 U.S. 241, 249–51, 69 S.Ct. 1079, 1084–85, 93 L.Ed. 1337 (1949)); *People v. Leipzig*, 23 A.D. 2d 854, 259 N.Y.S.2d 194, 195 (2d Dep't 1965) (*mem.*).

sonable doubt the conviction will stand." *McShall v. Henderson,* 526 F.Supp. at 161; *see also Neumann v. People of New York,* 526 F.Supp. 286, 291 (S.D.N.Y.1981) ("Petitioner is not entitled to a writ of habeas corpus merely because his conviction is based upon possibly conflicting interpretations of the evidence and testimony."). Furthermore, this court cannot substitute its own evaluation of the evidence for the jury's, even in a case where it might be inclined to differ. *See Jackson v. Virginia,* 443 U.S. at 319–20, 99 S.Ct. at 2789–90; *Mallette v. Scully,* 752 F.2d 26, 31 (2d Cir.1984); *Gruttola v. Hammock,* 639 F.2d 922, 928 (2d Cir.1981); *McShall v. Henderson,* 526 F.Supp. at 160–61. Under this standard and viewing the evidence at petitioner's trial in the light most favorable to the prosecution, *Jackson v. Virginia,* 443 U.S. at 319, 99 S.Ct. at 2789, *Gruttola v. Hammock,* 639 F.2d at 927–28, it is clear that petitioner's claim is wholly without merit (*see* pp. 922–23, *supra* ).

 As Claim (13) petitioner asserts that he was prejudiced by being tried together with Efrain Camara. To establish a violation of constitutional magnitude premised upon the alleged misjoinder of co-defendants, a petitioner must demonstrate that the misjoinder deprived him of a fair trial. *See United States v. Lane,* 474 U.S. 438, 106 S.Ct. 725, 730 n. 8, 88 L.Ed.2d 814 (1986). Presented *pro se,* petitioner's claim of improper joinder is apparently premised on the mistaken assumption that had he been tried separately, a great deal of the trial evidence would not have been admitted. He further claims that he and Camara had conflicting defenses and that the jury would have inferred that both defendants were guilty because their defenses conflicted.

In the instant case, the defenses were different because the accuseds' respective roles in the offenses charged were different. The defenses, however, did not conflict. Indeed, Camara's testimony in his own defense attempted to establish that no murder had been planned, that petitioner had nothing to do with the events that transpired and that he never even met peti-

tioner until after petitioner was arrested. Additionally, petitioner's notion that the proof would have been greatly reduced had he been tried alone is patently incorrect. *See, e.g., Willard v. Pearson,* 823 F.2d 1141, 1150 (7th Cir.1987). In any event, differences in degree of culpability, proof, or the notoriety of a co-defendant (petitioner asserts there was prejudicial publicity, but has presented no evidence thereof) do not entitle an accused to a separate trial. *See United States v. Chang An-lo,* 851 F.2d 547, 557 (2d Cir.1988), and cases cited therein; *United States v. Nersesian,* 824 F.2d 1294, 1304 (2d Cir.1987), *cert. denied,* — U.S. ——, 108 S.Ct. 357, 98 L.Ed.2d 382 (1987). Moreover, petitioner's jury was specifically instructed:

> ... [A]lthough both defendants are charged in one indictment and have been tried together, throughout your deliberations you are to consider and determine the guilt or innocence of each defendant separately.

Transcript of Charge at 88. Petitioner's claim is meritless. *See also Aimone v. Scully,* 849 F.2d 87, 88 (2d Cir.1988) (per curiam).

As his final claim, in conjunction with his prejudicial joinder argument, petitioner again asserts, based on *Sandstrom v. Montana,* that the court's charge on intent shifted away from the prosecution the burden of proof on that element. He appears to contend that the challenged instruction was somehow particularly prejudicial to him in the joint trial because "jurors are always ready to believe that birds of a feather are flocked together." Petitioner's *Pro Se* Memorandum of Law, dated July 8, 1988, at 9. Again, for the reasons already discussed, this claim is meritless.

## CONCLUSION

Based on the foregoing, I respectfully recommend that this petition be denied in its entirety.

The parties are hereby directed that if you have any objections to this Report and Recommendation you must, within ten (10) days from today, make them in writing, file them with the Clerk of the Court and send

copies to the Honorable Kenneth Conboy, to the opposing party and to the undersigned. Failure to file objections within the specified time may waive your right to appeal from any order that will be entered by Judge Conboy. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985), *reh'g denied,* 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986); *Wesolek v. Canadair Ltd.,* 838 F.2d 55 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237 (2d Cir.1983).